TODD DOUGLAS *v.* WARDEN, STATE PRISON
(14119)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued February 20—decision released May 21, 1991

*David J. Wenc,* for the appellant (petitioner).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *Michael Dearington,* state's attorney, and, on the brief, *Mary Elizabeth Baran,* assistant state's attorney, for the appellee (respondent).

GLASS, J. The petitioner, Todd Douglas, filed an amended writ of habeas corpus alleging that the Appellate Court's dismissal of his appeal had violated his federal constitutional rights to due process and to the assistance of counsel, and requesting that his appeal be reinstated on the Appellate Court's docket. The habeas court dismissed the petition on the grounds that the Appellate Court had not deprived the petitioner of his constitutional rights and that the habeas court lacked authority to restore his appeal to the Appellate Court's docket. We affirm.

The facts are as follows. After a jury trial, the petitioner was convicted of one count of burglary in the first degree, one count of robbery in the first degree and two counts of unlawful restraint in the first degree. He was sentenced to a total effective term of sixteen years imprisonment. On August 20, 1984, the petitioner appealed to the Appellate Court.

After the petitioner's indigence had been established, Attorney John Watson of the appellate unit of the public defender's office was appointed to represent him in

the appeal. Watson began preparing an appellate brief, but the petitioner grew dissatisfied with Watson because, in his view, Watson had given him poor advice in an earlier, unrelated matter. Ultimately, he filed a petition for a writ of habeas corpus alleging that Watson had engaged in misconduct and that a conflict of interest existed between them. Watson accordingly withdrew his appearance.

Special public defender R. Bartley Halloran was then appointed to represent the petitioner. Approximately two weeks later, at the petitioner's request, Halloran gave him the transcripts of his trial proceedings for review. The petitioner subsequently refused to return the transcripts. Some seven months thereafter, the petitioner filed a grievance against Halloran and a petition for a writ of habeas corpus and eventually advised Halloran that his services were no longer desired.[1] On June 11, 1986, Halloran filed a motion to withdraw his appearance on behalf of the petitioner, which the Appellate Court granted.

Approximately one and one-half years then passed, along with the deadline for filing the petitioner's appellate brief. The petitioner conceded at the habeas hearing that he had taken no action to secure appointed counsel[2] or otherwise perfect his appeal during that period. On March 25, 1988, the Appellate Court mailed notices to the petitioner's addresses of record stating that a hearing pursuant to Practice Book § 4055[3] would

---

[1] The petition ultimately was amended to challenge the subsequent actions of the Appellate Court that form the basis of this appeal. The grievance was dismissed with a recommendation that the petitioner seek new counsel.

[2] The petitioner was informed by the chief public defender that he should "seek assistance from the Court" if he desired the representation of another state-paid attorney.

[3] Practice Book § 4055 provides in pertinent part: "If a party shall fail to prosecute an appeal with proper diligence, the supreme court may . . . on its own motion, dismiss the appeal . . . ." The same rule applies to

be held on April 7, 1988, to determine whether the appeal should be dismissed for failure to file a brief, and that the petitioner could submit a letter to the court rather than personally appear at the hearing. The court subsequently learned that the petitioner had been relocated to a federal penitentiary in Pennsylvania. A revised notice was promptly mailed to him at that address, indicating that the hearing had been rescheduled for May 5, 1988, and again, that a letter would suffice in lieu of a personal appearance. Having received no response from the petitioner, the court dismissed his appeal for failure to prosecute with due diligence on May 5, 1988.

On the following day, however, the court received from the petitioner a letter entitled: "Notification of Delay and Request for Extension of Time Indefinitely—Until the Habeas Corpus Claim . . . to Appoint Appellate Attorney is Decided." The letter was returned to the petitioner along with a notice stating that his appeal had been dismissed. The petitioner then filed a motion for reargument or reconsideration, in which he gave reasons for his delayed response to the hearing notice and urged that the court reconsider its order of dismissal in light of his letter. On July 13, 1988, the court reconsidered and reaffirmed its order of dismissal.

Thereafter, on August 21, 1989, the petitioner amended his habeas petition to allege that the procedures employed by the Appellate Court in granting Halloran's motion to withdraw and dismissing his appeal deprived him of his federal constitutional right to due process, and, in addition, that he had been denied his

the Appellate Court by virtue of Practice Book § 2000, which provides in pertinent part: "The practice and procedure for appeals to the appellate court shall conform to the rules of practice governing appeals to the supreme court except where a particular practice or procedure is specified by the rules of the appellate court. . . ."

federal constitutional right to the assistance of appointed counsel because the Appellate Court had neglected to appoint appellate counsel for him.[4] At the habeas hearing, the petitioner modified his original prayer for relief[5] to request that the habeas court restore his appeal to the Appellate Court's docket and appoint counsel to prosecute his appeal. The state then moved to dismiss the petition on the grounds that the habeas court lacked authority to reinstate the petitioner's appeal on the Appellate Court's docket, and that, in any event, he had suffered no deprivation of his constitutional rights. The habeas court dismissed the petition, and this appeal followed.

In his appeal, the petitioner argues that the habeas court improperly determined that: (1) the Appellate Court did not violate his federal constitutional right to due process; (2) the Appellate Court did not deprive him of his federal constitutional right to the assistance of counsel; and (3) it lacked authority to reinstate his appeal on the Appellate Court's docket.

## I

The petitioner first claims that the procedures employed by the Appellate Court in connection with Halloran's motion to withdraw and its dismissal of his appeal violated our rules of practice and his federal constitutional right to due process.[6] With respect

---

[4] The petitioner also raised several equal protection claims, the habeas court's adverse decision on which he has not challenged in this appeal.

[5] The petitioner's original prayer for relief requested that "a writ of habeas corpus be issued to bring him before the court in that justice may be done."

[6] In this respect, we note that the petitioner has not claimed that the Appellate Court was without authority or grounds to dismiss his appeal. To the extent that he contends that the Appellate Court was required to appoint counsel for him on its own initiative before granting Halloran's motion to withdraw or dismissing his appeal, our disposition of his claim in part II, infra, addresses this contention.

to Halloran's motion, the petitioner claims that the notice he received did not comply with our rules of practice, and that the Appellate Court was constitutionally required to conduct an "evidentiary" hearing on the motion. He similarly attacks the Appellate Court's failure to hold an "evidentiary hearing" before dismissing his appeal.[7] We consider these claims in turn.

## A

Halloran moved to withdraw his appearance pursuant to Practice Book § 4035 (c). That subsection provides in pertinent part: "No motion for leave to withdraw shall be granted until the court is satisfied that reasonable notice has been given to the party being represented . . . ." The petitioner concedes that he received a copy of Halloran's motion to withdraw, but contends that this did not amount to "reasonable notice" under § 4035 (c) because he did not also receive the memorandum in support of the motion so that he could "properly respond."

The petitioner has not demonstrated how he was prejudiced by his lack of access to the supporting memorandum or his alleged inability to respond to the matters stated therein. In fact, in a letter to Halloran filed along with the motion, the petitioner attested to almost all of the matters set forth in the memorandum, thereby evincing his prior awareness of them. Furthermore, the petitioner's letter effectively responded to both the motion and the memorandum by implicitly indicating his consent to the granting of the motion as follows: "I'm officially notifying you that your legal services are undesired . . . . [T]erminating this corresponding relationship by withdrawing your legal

---

[7] The petitioner also claims that the Appellate Court was required to "provide for" his presence at both evidentiary hearings. Because we conclude that the Appellate Court properly declined to conduct evidentiary hearings, we do not address this claim.

services will be the best course of action to resolve our conflict of interest." Upon receipt of Halloran's motion, albeit absent the supporting memorandum, the petitioner failed to utilize the opportunity available under Practice Book § 4041 (a)[8] to register his opposition to the motion, nor does he now claim that he would have opposed the motion if he had received the memorandum or otherwise would have responded in a manner contrary to his wishes as stated in his letter. We therefore conclude that, in these circumstances, the mailing of Halloran's motion, alone, constituted notice sufficient to satisfy the requirements of § 4035 (c).

As for the Appellate Court's failure to hold a hearing on the motion, our rules of practice provide that hearings on motions to withdraw "will be assigned only upon order of the court or upon specific request of one of the parties in accordance with [Practice Book §] 4044."[9] Practice Book § 4043;[10] see also Practice Book § 4041 (b).[11] The petitioner did not request that Halloran's

---

[8] Practice Book § 4041 (a) provides in pertinent part: "A party intending to oppose a motion or application shall file a brief statement clearly setting forth the factual and legal grounds for opposition within ten days after the filing of the motion or application. The opposing party may but need not file a memorandum of law in opposition to the motion or application within ten days after the filing of the motion or application."

[9] Practice Book § 4044 provides: "Any motion requiring a hearing, a copy of which has been received by the chief clerk of the supreme court before the assignment of cases for hearing under Sec. 4104, shall be assigned for hearing at the same time that other assignments are made. Motions subsequently received by the clerk may be assigned for hearing at any time, notice thereof being given to counsel."

[10] Practice Book § 4043 provides: "Hearings on motions to dismiss under Secs. 4055 and 4056, on motions for judgment under Sec. 4055 and on applications for withdrawal of appearance under Sec. 4035 will be assigned only upon order of the court or upon specific request of one of the parties in accordance with Sec. 4044. Hearings on other motions, petitions and applications will be similarly assigned only if ordered."

[11] Practice Book § 4041 (b) provides in pertinent part: "If the party opposing such . . . application [for withdrawal of appearance] desires a hearing, that party shall file a request for hearing with the statement of opposition. . . ."

motion be assigned for a hearing pursuant to Practice Book § 4041 (b) in accordance with § 4044. In addition, while he now seems to claim that the motion raised a factual issue requiring an "evidentiary" hearing, he failed to request that the Appellate Court exercise its supervisory powers under Practice Book §§ 2000[12] and 4183 (10) to "remand [the] matter to the trial court for the resolution of factual issues where necessary." Practice Book § 4183 (10).

Although the Appellate Court could have ordered, sua sponte, an appellate hearing on the motion or ordered the matter remanded to the trial court for a factual determination; see Practice Book §§ 2000, 4043, 4183 (10); we do not agree that its failure to do so deprived the petitioner of due process. " '[T]he fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked.' *Anderson National Bank* v. *Luckett,* 321 U.S. 233, 246 [64 S. Ct. 599, 88 L. Ed. 692 (1944)]. But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link* v. *Wabash R. Co.,* 370 U.S. 626, 632, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962). In this case, the circumstances demonstrate that Halloran's withdrawal was prompted by the petitioner's letter stating that withdrawal was "the best course of action." The letter indicated that the petitioner understood that the withdrawal would result in his loss of Halloran's representation in the appeal, as well as his desire for

---

[12] See footnote 3, supra.

that precise result. Consequently, the petitioner can hardly assign a due process violation to the Appellate Court's failure to order or conduct a hearing on an issue that it could reasonably have been induced to believe was a nonissue as a result of his own representations. We therefore conclude that the habeas court correctly determined that the Appellate Court's procedures respecting Halloran's motion to withdraw did not deprive the petitioner of due process.

B

The petitioner's claim that the Appellate Court violated his due process rights by failing to hold an "evidentiary" hearing before dismissing his appeal is also without merit. If the petitioner had desired such a hearing before the trial court, he did not make that desire apparent to the Appellate Court by filing an appropriate request pursuant to § 4183 (10). Even if he had made such a request, however, the issue of whether he had failed to prosecute his appeal diligently was not a "factual" issue necessitating a remand to the trial court for resolution under § 4183 (10). The resolution of that issue required a discretionary determination based upon the record and the facts as represented by the parties. *Loomis* v. *Zoning Commission,* 144 Conn. 743, 746, 133 A.2d 906 (1957); see *Maykut* v. *Plasko,* 170 Conn. 310, 313, 365 A.2d 1114 (1976); *Bronson* v. *Mechanics Bank,* 83 Conn. 128, 129, 134–35, 75 A. 709 (1910); see also *Reilly* v. *Pepe Co.,* 108 Conn. 436, 442–43, 143 A. 568 (1928); accord *Murphy* v. *Elms Hotel,* 104 Conn. 351, 353–54, 133 A. 106 (1926). It was incumbent upon the Appellate Court to "analyze the entire course of conduct and determine whether, under the circumstances, any good reason appears why the appellant should be permitted further to pursue his appeal." *Loomis* v. *Zoning Commission,* supra.

An opportunity for the petitioner to provide "good reason" for his neglect of the appeal, therefore, was all that due process required. Such an opportunity was afforded to the petitioner when the court scheduled, sua sponte, a § 4055 hearing pursuant to Practice Book § 4043,[13] and offered him the alternative, in view of his incarceration, of submitting a letter stating his reasons why the appeal should not be dismissed for lack of due diligence. The petitioner took advantage of the latter opportunity by submitting a letter with several attachments at the rehearing on the motion to dismiss, and he has not claimed that he was precluded from bringing any additional matter to the Appellate Court's attention. Furthermore, the Appellate Court reconsidered its original order of dismissal in light of the petitioner's letter. He therefore was given ample opportunity to be heard as provided for under our rules of practice and was effectively "heard" regarding the dismissal when the Appellate Court reconsidered its order of dismissal. As a consequence, we cannot say that the Appellate Court's procedures deprived the petitioner of due process.

## II

The petitioner next claims that the Appellate Court "frustrated" his constitutional right to the assistance of appointed counsel because it "neglected to appoint an attorney" for him. As he conceded at the habeas hearing, however, the petitioner did not request that the Appellate Court appoint counsel for him either at the time of Halloran's withdrawal or at any time thereafter. The habeas court, in determining that the state had provided the petitioner with two "extremely capable" attorneys, whom the petitioner had, in effect, discharged while his appeal was pending, implicitly found

---

[13] See footnote 10, supra.

that the Appellate Court would have been justified in refusing to appoint yet another attorney for him even if he had requested one. We agree.

"The assistance of appellate counsel . . . may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right." *Swenson* v. *Bosler,* 386 U.S. 258, 259, 87 S. Ct. 996, 18 L. Ed. 2d 33 (1967). Nonetheless, the constitutional right of an indigent accused to the assistance of appellate counsel "may be waived, if it is waived intelligently, understandingly and in a competent manner. *Moore* v. *Michigan,* 355 U.S. 155, 161, 78 S. Ct. 191, 2 L. Ed. 2d 167 [1957]; *Uveges* v. *Pennsylvania,* 335 U.S. 437, 441, 69 S. Ct. 184, 93 L. Ed. 127 [1948]." *State* v. *Nash,* 149 Conn. 655, 662, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962). Where the record clearly demonstrates that an accused was offered counsel by the court and rejected the offer, he bears the burden of establishing that he did not intelligently and understandingly waive his right to counsel. Id.; see *Consiglio* v. *Warden,* 153 Conn. 673, 678, 220 A.2d 269 (1966); see also *Moore* v. *Michigan,* supra. An accused who collaterally attacks a judgment of conviction on the ground of an unconstitutional deprivation of the assistance of counsel must prove nonwaiver by a preponderance of the evidence. *Moore* v. *Michigan,* supra, 161–62; *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). The petitioner failed to satisfy this burden.

The record discloses that the petitioner was offered and rejected the services of not one, but two state-paid attorneys. His reason for rejecting the first attorney, Watson, was his unsubstantiated assertion that Watson previously had given him poor advice in an unrelated matter, which, in his opinion, amounted to misconduct

and created a "conflict of interest" between him and Watson. The petitioner neither alleged nor established at the habeas hearing that Watson's performance with respect to his appellate brief fell below the required standard of "reasonable competence" displayed by lawyers with ordinary training and skill in the criminal law. See *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984).

As for Halloran, the asserted ground for rejection of his services was another "conflict of interest" that the petitioner primarily attributed to Halloran's "procrastinating in prosecuting [the] appeal." We have recognized that, as an adjunct to the right to the assistance of counsel, "a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." *State* v. *Williams,* 203 Conn. 159, 167, 523 A.2d 1284 (1987). Our courts are not, however, constitutionally required to comply with a demand for the appointment of replacement counsel on the basis of a purported conflict that arises from the unreasonable conduct of the accused himself. *State* v. *Crenshaw,* 210 Conn. 304, 314, 544 A.2d 1074 (1989); *State* v. *Drakeford,* 202 Conn. 75, 84, 519 A.2d 1194 (1987); see *Sekou* v. *Warden,* 216 Conn. 678, 688, 583 A.2d 1277 (1990). The record reveals that Halloran's inability to prosecute the appeal resulted from the petitioner's refusal to return the trial transcripts after they had been delivered to him, at his request, approximately one month after Halloran had been appointed. At the habeas hearing, the petitioner produced no evidence to establish that he had been willing to return the transcripts or otherwise cooperate in the preparation of his appeal. He did not claim, moreover, that Halloran was incompetent or would have been unable to present his appellate claims in an effective manner. Under these circumstances, we

cannot say that a "conflict of interest" arising primarily from the petitioner's groundless belief that Halloran was to blame for the delay in the filing of his appellate brief amounted to a "valid and sufficient reason" that would have entitled him to the appointment of replacement counsel. *State* v. *Gethers,* 193 Conn. 526, 543, 480 A.2d 435 (1984); *McKee* v. *Harris,* 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982).

In this case, therefore, we are not confronted with "a situation where the accused was handicapped by mental deficiency or other inability to make an intelligent choice, or by precipitateness in the acceptance of a plea of guilty. See *Carter* v. *Illinois,* 329 U.S. 173, 179, 67 S. Ct. 216, 91 L. Ed. 172 [1946]." *State* v. *Nash,* supra, 662. "No one can have the slightest doubt that he was aware at all times that he was knowingly and intelligently rejecting the aid of counsel." *Nash* v. *Reincke,* 212 F. Sup. 877, 881 (D. Conn. 1962), aff'd, 325 F.2d 310 (2d Cir. 1963), cert. denied, 377 U.S. 938, 84 S. Ct. 1345, 12 L. Ed. 2d 302 (1964). The petitioner appears to have been under the mistaken impression, however, that his right to the assistance of counsel encompassed the right to be represented by appointed counsel of his own choosing. "The claim that without reason an accused can refuse the services of the public defender and compel the state to engage counsel of his own choice is without merit." *State* v. *Reid,* 146 Conn. 227, 235, 149 A.2d 698 (1959); see *State* v. *Gethers,* supra; see also *United States* v. *Pina,* 844 F.2d 1, 6 (1st Cir. 1988).

Upon the present record, therefore, it is evident that the state provided the petitioner with two attorneys that even he does not claim were ineffective, and that he was thereby given an adequate opportunity to present his appeal. See *State* v. *Nash,* supra, 662–63;

see also *Griffin* v. *Illinois,* 351 U.S. 12, 19, 76 S. Ct. 585, 100 L. Ed. 891 (1956). By rejecting the able assistance of his appointed attorneys without sufficient reason, the petitioner "waived his right to counsel on [his] appeal and cannot now take advantage of his refusal to have counsel appointed for him." *State* v. *Nash,* supra, 662; see *State* v. *Drakeford,* supra. The Appellate Court would thus have been justified in refusing to appoint yet another attorney for the petitioner even if he had made the appropriate request, and the habeas court properly determined that the Appellate Court did not violate his constitutional right to the assistance of counsel by declining to appoint counsel for him on its own initiative.

Since we conclude that the Appellate Court's actions did not violate the petitioner's constitutional rights, the issue of whether the habeas court would have had the authority to grant him habeas relief in the form of reinstatement of his appeal to the Appellate Court's docket is moot.

The judgment is affirmed.

In this opinion the other justices concurred.