STATE OF CONNECTICUT *v.* RAFAEL LOPEZ
(15186)

Peters, C. J., and Callahan, Borden, Berdon and Katz, Js.

488

Argued September 27—decision released December 12, 1995

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Joan E. Alexander,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The sole issue in this certified appeal is whether the trial court's order rectifying a transcript pursuant to Practice Book § 4051, without affording the defendant an evidentiary hearing, was consistent with the due process clause of the fourteenth amendment

to the federal constitution.[1] On April 9, 1992, the defendant, Rafael Lopez, was convicted, after a jury trial, of criminal possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[2] The defendant was sen-

[1] The fourteenth amendment to the United States constitution provides in relevant part that no state shall "deprive any person of life, liberty or property, without due process of law . . . ."

The defendant has provided no independent analysis under the state constitution. We therefore limit our discussion of this matter to the federal guarantee. See *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

[2] General Statutes § 21a-278 provides: "Penalty for illegal manufacture, distribution, sale, prescription or administration by non-drug-dependent person. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution.

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

tenced to a fifteen year term of imprisonment on that charge on May 29, 1992.[3]

Immediately prior to several of the recesses taken during the course of the defendant's trial, the trial court instructed the jurors with regard to discussing the case, either among themselves or with others before the evidence was completed, final arguments were heard and the jury was charged. The initial transcript of the court's instructions provided to the defendant by the court reporter indicated that, prior to the first recess of the trial, the court instructed the jury, in part, as follows: "You must never discuss this case with anyone, only among yourselves, only among yourselves during the breaks, during the lunch hour in the morning, but not with anyone at home or your neighbors. Because if it comes to my attention that [sic] it becomes a violation of your obligation and so that could cause us some serious dilemmas. So I don't anticipate there will be any problem for us, but do not discuss the case. And if someone should inadvertently even broach the matter, you discourage them and remind them of my admonitions to you." This instruction, if it actually had been given, would have been conspicuously inconsistent with every other instruction given by the court on the subject. At various points, the trial court instructed the jurors "not to discuss the case," "not [to] discuss it amongst yourselves tonight or tomorrow when you report," not to "discuss this case amongst yourselves," "not to review or discuss this case with anyone," and "not to give this case any consideration, not to discuss it . . . ."

The defendant subsequently filed an appeal in the Appellate Court claiming impropriety in the court's

---

[3] The defendant was also sentenced to a two year term on a charge of failure to appear in the first degree, to which he had previously pleaded guilty. The two sentences were to run consecutively, for a total effective sentence of seventeen years.

instruction that seemingly would have allowed the jurors to discuss the case amongst themselves prior to commencing their deliberations, contrary to *State* v. *Washington*, 182 Conn. 419, 424–25, 438 A.2d 1144 (1980). On the same day that the defendant filed his initial brief in the Appellate Court, he also filed the certified transcript. The state then notified the court reporter of the potential transcription error and asked the reporter to review the relevant portions of the transcript.

On March 1, 1994, the day that the state's brief was due in the Appellate Court, the state moved to rectify the transcript based on its belief that the court reporter had inaccurately transcribed the instruction of the trial court that had been raised as an issue on appeal. Appended to its motion was a certification from the court reporter certifying as true and accurate a corrected version of the transcript. The relevant portion of the corrected transcript provides: "You must never discuss this case with anyone, *not* only among yourselves during the breaks, during the lunch hour, in the morning, not with anyone at home or your neighbors. Because if it comes to my attention then it becomes a violation of your obligation and so that could cause us some serious dilemmas. So I don't anticipate there will be any problem for us, but do not discuss the case. And if someone should inadvertently even broach the matter, you discourage them and remind them of my admonitions to you." (Emphasis added.)

On March 11, 1994, the defendant filed a general objection to the motion for rectification and requested an evidentiary hearing before a different judge to determine whether the transcript should be rectified. On March 21, 1994, the trial court,[4] over the defendant's

---

[4] The defendant claims that he is entitled not only to an evidentiary hearing prior to rectification of the transcript but also to a hearing before a different trial judge than the one who gave the instruction in question. We need not reach this issue as we conclude that no hearing is required in this case.

objection, ordered the transcript rectified in accordance with the court reporter's corrected version. The court did not hold an evidentiary hearing and provided no additional notice to the parties before ordering the rectification. The Appellate Court, after ruling on certain motions relating to the transcript rectification,[5] affirmed the defendant's conviction in a memorandum decision. *State* v. *Lopez*, 36 Conn. App. 927, 650 A.2d 181 (1994). The issue before the court in this certified appeal is whether, in this case, the trial court's order of rectification without an evidentiary hearing was consistent with procedural due process.[6]

Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). There is no per se rule that an evidentiary hearing is required

[5] On March 25, 1994, the defendant moved for review in the Appellate Court of the trial court's rectification of the record, claiming that there should have been an evidentiary hearing and that a different trial judge should have presided over such a hearing and ruled on the rectification motion. The state opposed this motion and, on April 20, 1994, the Appellate Court granted review but denied the requested relief.

On April 28, 1994, the defendant amended his appeal to include the Appellate Court's granting of his motion for review but denial of the relief sought. On April 29, 1994, the defendant moved in the Appellate Court for permission to file a supplemental brief on this matter. The state opposed this motion as well as the amended appeal. The Appellate Court subsequently denied the defendant's request for permission to file a supplemental brief and, sua sponte, dismissed his amended appeal. The defendant then petitioned this court for certification to review the dismissal of his amended appeal and the denial of his supplemental briefing request. We dismissed that petition because those actions of the Appellate Court were not final judgments entitled to review by way of a petition for certification.

[6] We granted certification limited to the following issue: "Whether the defendant was denied due process of law when the trial court failed to give the defendant notice and the right to be heard before the trial court ordered the transcript of its instructions to the jury rectified?" *State* v. *Lopez*, 232 Conn. 908, 653 A.2d 195 (1995).

whenever a liberty interest may be affected. "Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (Internal quotation marks omitted.) *Ingraham* v. *Wright*, 430 U.S. 651, 675, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). Rather, the "[s]pecific dictates of due process generally require consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [state's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

When determining what procedures are constitutionally required, we must bear in mind that "[t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and [an] opportunity to meet it." (Internal quotation marks omitted.) Id., 348–49. The elements of notice and opportunity, however, do not require a "judicial-type hearing in all circumstances." *Parham* v. *J.R.*, 442 U.S. 584, 608 n.16, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979). So long as the procedure afforded adequately protects the individual interests at stake, there is no reason to impose substantially greater burdens on the state under the guise of due process. See *Douglas* v. *Warden*, 218 Conn. 778, 785, 591 A.2d 399 (1991) (due process requires "notice and proceedings . . . adequate to safeguard the constitutional right for which the constitutional protection is invoked"). We conclude that the defendant in this case had adequate notice of the state's motion for rectification and had an adequate opportunity to be heard.

Practice Book § 4042 provides that all motions shall be "served on each other counsel of record . . . ." In this case there is no dispute that the state complied with § 4042 and that the defendant timely received notice of the state's motion for rectification. The defendant claims, however, that the trial court was required to notify him of its intention to rule on his motion for rectification before acting on the motion. The defendant offers no legal authority for this novel claim. Neither this court nor any other of which we are aware has ever required a trial court to provide interested parties with notice of its intention to rule on pending motions. So long as the trial court provides the party opposing a motion an opportunity to respond, the trial court is free to rule at any appropriate time.

This opportunity to respond is guaranteed by Practice Book § 4041 (a) which provides: "A party intending to oppose a motion or application shall file a brief statement clearly setting forth in separate paragraphs appropriately captioned the factual and legal grounds for opposition within ten days after the filing of the motion or application. If an opposing party chooses to file a memorandum of law in opposition to a motion or application, that party shall do so within ten days after the filing of the motion or application. Responses to memoranda in opposition to a motion are not permitted." The defendant in this case was provided an opportunity to oppose the motion for rectification and actually did so. In opposition, however, the defendant did not provide the trial court with any facts that would have required a hearing. The defendant's motion simply reiterated that "[t]he court reporter has . . . certified two inconsistent versions of the record as true and accurate" and stated, without citation of authority, that a hearing was therefore necessary.

Furthermore, Practice Book § 4051, which governs transcript rectification does not require a hearing. Until

1985, the rules of practice provided that a trial transcript could be rectified only "after [a] hearing." Practice Book, 1983, § 3082 (now § 4051). In 1985, however, the hearing requirement was deleted so that § 4051 currently provides in pertinent part as follows: "Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record . . . shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved. . . . The action of the trial judge as regards such a correction or addition may be reviewed by the court in which the appeal is pending under Sec. 4054."

We construe the 1985 deletion of the hearing requirement as vesting discretion in the trial court to determine whether to hold an evidentiary hearing before correcting a transcript. The principal basis upon which the trial court may exercise its discretion regarding the propriety of an evidentiary hearing is the memorandum and accompanying documentation suggested in § 4041 (a). In this case, the only basis the defendant provided the trial court to deny the state's motion for rectification was the fact, of which the court was already aware, that two transcripts had been certified as accurate by the court reporter.[7]

In his appellate brief, the defendant now posits several potential avenues that could have been explored

---

[7] This fact is of course present in every transcript rectification case because, by definition, there is an original transcript that is allegedly erroneous and a subsequent transcript that the court reporter attests is true and accurate after reviewing his or her notes. If this fact alone were sufficient, the trial court would have no discretion and would be required to hold an evidentiary hearing each time a court reporter makes a material transcription error.

during an evidentiary hearing. According to the defendant, those avenues "could have included the court reporter's notes and any dictation to a typist (if one was used), the testimony of the typist, and the testimony of an independent note reader who could have examined the notes taken by the court reporter to determine which (if either) certified transcript is accurate. It could also have included the testimony of the trial attorneys and the defendant himself, as to their recollection of the instruction on this point." If such evidence does exist, it might have a significant effect on the outcome of a motion for rectification. We can perceive, however, no principled reason in the due process clause or elsewhere for a presumption that such evidence does in fact exist. The burden imposed on the state by a per se rule requiring a full evidentiary hearing for every transcript rectification would far outweigh any benefit the defendant might derive from such a rule. See *Mathews* v. *Eldridge*, supra, 424 U.S. 335. We can perceive no harm in requiring a defendant to marshall at least some evidence in opposition to a motion to rectify in order to demonstrate to the trial court the necessity for a hearing, rather than having a per se rule that mandates a hearing whenever a question of transcription error arises.

In light of the facts in the record in this case, the only logical conclusion to be drawn by the trial court was that the court reporter had simply made an error when translating her courtroom notes into transcript form. The court reporter herself, after being asked to review her notes, submitted a corrected version of the relevant page of the transcript and, with knowledge of her first version of the transcript, attested that the second version was true and accurate, including the revised portion. The fact that not one party in the courtroom, including the defendant's trial counsel, made any mention of an impropriety in the trial court's instruction

regarding the jury's discussion of the case further suggests that the alleged improper instruction was never in fact given. Additionally, the jury was admonished on at least five separate occasions, after the initial instruction, not to discuss the case among themselves, and not once did any juror indicate that he or she had previously discussed the case based on the first instruction. Although these facts are not necessarily conclusive, in the absence of any hint of a factual basis to conclude otherwise, we are persuaded that the trial court properly viewed the original transcript as inaccurate and correctly ordered the transcript rectified without assuming the unwarranted burden of a full evidentiary hearing.

We conclude that no protection afforded by the due process clause of the fourteenth amendment may fairly be characterized as creating a per se rule requiring a hearing before a transcript rectification is ordered. See *Parham* v. *J.R.*, supra, 442 U.S. 608 n.16. The due process clause requires only an opportunity to be heard, not necessarily a full evidentiary hearing. *Douglas* v. *Warden*, supra, 218 Conn. 785. In this case, the defendant had the opportunity to be heard by providing the trial court with written opposition to the state's motion for rectification and by providing the court with affidavits and any other evidence supporting his claim that the original transcript was correct. The defendant provided no such evidence and, under the circumstances, we cannot conclude that the trial court abused its discretion by not conducting an evidentiary hearing before rectifying the transcript.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., and BORDEN and KATZ, Js., concurred.

BERDON, J., dissenting. The significant and only issue before this court can be simply stated: whether a defendant has a constitutional due process right to be heard before the trial court may decide the state's motion to rectify a transcript when the substance of the proposed rectification is crucial to an issue raised on appeal.

The majority clouds this issue by focusing on whether it was plausible that the trial court instructed the jury improperly. Relying on a sworn altered transcript furnished by the court reporter, other instructions given by the court during the course of the trial, and the absence of an objection to the trial court's instructions, this court concludes that the altered transcript had to be correct. That conclusion not only defies logic, but has nothing to do with the issue we certified.[1]

It is fundamental, under both the federal and state constitutional due process clauses, that a party whose rights are being affected has a right to be heard. *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 376, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). Moreover, that opportunity to be heard must be granted "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

The altered transcript affected the issue of whether the trial court improperly instructed the jury that they could deliberate before all the evidence was submitted

---

[1] We granted certification limited to the following issue: "Whether the defendant was denied due process of law when the trial court failed to give the defendant notice and the right to be heard before the trial court ordered the transcript of its instructions to the jury rectified?" *State* v. *Lopez*, 232 Conn. 908, 908–909, 653 A.2d 195 (1995).

and before they were instructed on the law to be applied in this case. This court has repeatedly held that it would be a clear violation of the state constitutional right to a trial by an impartial jury for a trial court to instruct a jury that they may discuss the case before it is submitted to them with proper jury instructions. *State* v. *Cubano*, 203 Conn. 81, 89, 523 A.2d 495 (1987); *State* v. *Castonguay*, 194 Conn. 416, 433, 481 A.2d 56 (1984); *State* v. *Washington*, 182 Conn. 419, 426, 438 A.2d 1144 (1980). In *Washington*, this court reasoned as follows: "[I]t is human nature that an individual, having expressed in discussion his or her view of the guilt or innocence of the defendant, would be inclined thereafter to give special attention to testimony strengthening or confirming the views already expressed to fellow jurors. . . . Because the prosecution presents its evidence first, initial expressions of opinion would generally be unfavorable to the defendant. . . . Also, the human mind is constituted so that what one himself publicly declares touching any controversy is much more potent in biasing his judgment and confirming his predilections than similar declarations which he may hear uttered by other persons. When most men commit themselves publicly to any fact, theory, or judgment they are too apt to stand by their own public declarations, in defiance of evidence. This pride of opinion and of consistency belongs to human nature." (Citations omitted; internal quotation marks omitted.) *State* v. *Washington*, supra, 426. Of course, even if the trial court did issue such a jury instruction, it would not be grounds for a new trial if the state proved the error to be harmless beyond a reasonable doubt. But first things first—there must be a hearing to determine whether the trial court instructed the jury that they could discuss the case before it was submitted to them.

In this case, the trial court was alerted to the fact that the defendant wished to be heard before the court

acted on the state's motion for rectification. The defendant filed, within the appropriate time, an objection to the motion for rectification, specifically requesting that there be a hearing. The court holds today that the defendant's due process rights were not violated because the defendant "did not provide the trial court with any facts which would have required a hearing." But the defendant could do no more, for, as his public defender pointed out at oral argument, the court reporter refused to speak to him after the altered transcript was issued. Without a hearing, the defendant was unable to procure any evidence regarding the correctness of the altered transcript.

The trial court without any hearing granted the motion for rectification, merely relying on the court reporter's altered transcript and on the judge's personal belief in his own infallibility. The judge appended a brief, handwritten memorandum of decision to the motion's order in which he wrote: "This court has *never* so cautioned jurors, in its 17 years, to discuss a pending case except during its deliberation at the conclusion of the charge. It is an obvious but unfortunate error on the part of the typist or court reporter. An examination of my jury cases will disclose jury cautions consistent with our law. Clearly, if such an erroneous caution had been given, both counsel would have quickly alerted the court. It is incredible that anyone would believe that a trial judge would instruct jurors to discuss a pending case during their 'breaks.' " (Emphasis in original.) The question for the trial court, of course, was not whether it intended to instruct the jury that they could discuss the case. Rather, it is whether the trial court, on *this* specific occasion, inadvertently did so. And, unfortunately, as incredible as it may be, trial judges have instructed juries that they may discuss the case before it is submitted to them. See *State* v. *Caston-*

*guay,* supra, 194 Conn. 432; *State* v. *Washington,* supra, 182 Conn. 422–24.

Surely, due process of law and fundamental justice requires that a hearing be provided in which the defendant would have an opportunity to examine the court reporter, and have another court reporter examine the stenographic notes. To allow the decision on the motion to rectify to be made based solely on the court reporter's certified altered transcript, without being subject to examination, and on the trial judge's record of never having instructed the jury in the manner stated in the original certified transcript, does not afford the defendant an opportunity to be heard and deprives him of procedural due process.

The public defender in her brief to the court pragmatically notes: "The defendant has consistently sought nothing more than a brief hearing and the concomitant opportunity to present evidence to determine the accuracy of his transcript. It is unclear why, in the context of this case, the state has opposed this." It is equally unclear to me why the majority opposes such a minimal procedural safeguard. If nothing more was accomplished in such a brief hearing, the indigent defendant would have at least perceived that justice was done.[2]

Additionally, the court inappropriately relies on the 1985 modification of § 4051 (formerly § 3082) of the

---

[2] In footnote 7 of the majority opinion, the court exaggerates the burden that would be placed upon the trial court if a hearing was required before the court could act on a motion to rectify a transcript. I have three responses to the aggrandizement of the trial court's burden. First, such a hearing would be required only if after the motion for rectification the criminal defendant made a timely request for such a hearing. Second, as any trial judge can attest to, requests for rectification are rarely made. Indeed, in the eighteen years I sat on the trial bench, no party in any case over which I presided had ever made such a motion relative to a transcript. Finally, and most importantly, on balance, any burden on the trial court is far outweighed by the need of the defendant for a hearing and by the integrity of the trial process.

502

Practice Book. The deletion of the reference to a hearing is heralded by the majority as vesting the trial court with discretion regarding procedural due process. This analysis, however, completely disregards the fundamental tenet (which I hope the majority accepts) that the rules of practice adopted by the justices of this court do not trump the federal and state constitutions.

This case greatly concerns me. Not only does the court narrowly view the procedural due process rights of the defendant, it also leaves an underlying perception that justice was denied this indigent defendant. Accordingly, I would reverse the decision of the Appellate Court and order that the matter be remanded to the trial court to conduct a hearing on the motion for rectification.

I respectfully dissent.