## STATE OF CONNECTICUT *v.* CHARLES COLEMAN
### (12812)

Schaller, Spear and Hennessy, Js.

Submitted on briefs February 13[1]—officially released May 7, 1996

---

[1] This appeal was originally argued on May 23, 1995. The amended appeal now before this court was submitted on briefs.

*Temmy Ann Pieszak*, assistant public defender, filed a brief for the appellant (defendant).

*Michael Dearington*, state's attorney, *Harry Weller*, assistant state's attorney, and *John Waddock*, assistant state's attorney, filed a brief for the appellee (state).

SCHALLER, J. This case is before us following proceedings in the trial court pursuant to our earlier remand of the case. *State* v. *Coleman*, 38 Conn. App. 531, 662 A.2d 150, cert. denied, 235 Conn. 906, 665 A.2d 903 (1995). The defendant appeals from the judgment of conviction, rendered after a trial by the court, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[2] burglary in the second degree in violation of General Statutes § 53a-102 (a),[3] unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a),[4] four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[5] and robbery in the third degree in violation of General Statutes §§ 53a-136 (a)[6] and 53a-133.[7]

---

[2] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[3] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[4] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[5] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[6] General Statutes § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133."

[7] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate

In *State* v. *Coleman*, supra, 38 Conn. App. 531, we addressed the defendant's claim that the destruction of a sex crime kit had deprived the defendant of his right to due process of law under article first, § 8, of the Connecticut constitution. In deciding the defendant's motion to dismiss following discovery of the destruction of the evidence, the trial court had applied the bad faith test.[8] After the trial court's decision to deny the motion to dismiss, however, our Supreme Court decided that the *Asherman*[9] balancing test must be used in cases involving a claim of violation of due process because of the loss or destruction of physical evidence. *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995). We remanded the case to the trial court to reconsider the defendant's motion to dismiss. *State* v. *Coleman*, supra, 536. On remand, the trial court determined that the defendant's due process rights had not been violated.

On the basis of the proceedings on remand, the defendant now claims that the trial court (1) improperly violated his right to due process of law by refusing to permit him to introduce evidence in an evidentiary hearing and improperly applied the *Asherman* balancing test.[10] We disagree. Because we disagree, we also address the defendant's remaining claims on appeal. The defendant claims that the trial court improperly

use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[8] See *Arizona* v. *Youngblood*, 488 U.S. 51, 56–57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988); *State* v. *Leroux*, 18 Conn. App. 223, 227, 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989).

[9] *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

[10] The defendant amended his appeal to add these claims pursuant to Practice Book § 4006. We granted the defendant permission to file a supplemental brief in relation to the claims.

(2) denied him a one day continuance, (3) refused to remove the shackles and to state any reason for the use of the shackles, (4) deprived him of due process by convicting him of burglary in the second degree, (5) concluded that the evidence was sufficient to support his conviction of burglary in the first degree, (6) violated his right not to be placed in double jeopardy, (7) concluded that the evidence was sufficient to support his conviction of unlawful restraint in the first degree, (8) deprived him of due process when it vindictively sentenced him to 110 years in prison, and (9) violated his right not to be subject to cruel and unusual punishment. We affirm the judgment of the trial court.

In *State* v. *Coleman*, supra, 38 Conn. App. 533–34, we set forth the following facts. "On August 12, 1986, the defendant was arraigned on seven charges stemming from a burglary, robbery and repeated sexual assaults that occurred in the early morning of March 4, 1986. An agreement was reached in which the defendant pleaded guilty under the *Alford* doctrine[11] to the charges, as well as to charges from eight other files. Prior to sentencing, the defendant sought to withdraw all of his pleas. The trial court allowed the defendant to withdraw his plea on one count from another file, but denied his motion to withdraw his pleas in this case. The defendant was sentenced to thirty-five years in prison on all charges from all nine files.

"On appeal, we affirmed the trial court's refusal to allow the defendant to withdraw his plea. *State* v. *Coleman*, 17 Conn. App. 307, 552 A.2d 442 (1989). Subsequently, the defendant filed a petition for habeas corpus relief in federal court claiming that his plea canvass was defective. The United States District Court for the District of Connecticut vacated the defendant's pleas and remanded the matter for trial. After that decision,

---

[11] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

on February 19, 1992, the New Haven police department destroyed several pieces of evidence from the case. The destruction of that evidence was carried out pursuant to a court order dated June 6, 1990. A sex crime kit, which was not included on the list was erroneously destroyed. The kit contained physical evidence pertinent to the sexual assault. The United States Court of Appeals for the Second Circuit subsequently affirmed the decision of the District Court.

"After pleading not guilty to all counts, the defendant elected to be tried by the court. The defendant requested that the sex crime kit be made available for [deoxyribonucleic acid] DNA testing. When the state revealed that the kit had been erroneously destroyed, the defendant moved to suppress any test results and information regarding the testing of items in the kit, and to dismiss the charges on the basis of the state's destruction of potentially exculpatory physical evidence. The motions were denied. The trial court found the defendant guilty on seven of the eight counts as charged. On the other count, the court found the defendant guilty of the lesser included offense of burglary in the second degree. The defendant received an effective sentence of 110 years in prison." *State* v. *Coleman,* supra, 38 Conn. App. 533–34.

The trial court found the following additional facts. The victim resided alone in a New Haven apartment. During the early morning of March 4, 1986, she was asleep with her glasses on and wearing a nightgown. Between 3:30 and 4 a.m., the defendant used a sharp cutting tool to remove a pane of glass from one of the victim's bedroom windows and entered her apartment. The victim awoke with the defendant straddling her. The defendant held his hand over the victim's mouth and told her not to move if she did not want to get hurt. The defendant told her to take off her glasses and she did so. The defendant forced her to commit fellatio

as he stood next to her bed and also forced her to engage in vaginal intercourse.

The defendant then demanded the victim's money. She had cashed her paycheck the previous day and had separated the money into envelopes, each marked for the purpose of paying various bills. The defendant ordered the victim to take the money from the envelopes and she did so. The victim estimated that she had between $500 and $600. The defendant went through the envelopes and moved them about on the bed. The defendant asked the victim if she had any jewels or furs, and she replied in the negative. The defendant also asked her if she had a car, and she replied that she had a Datsun; he said he did not want the car.

The defendant then ordered the victim to get on her hands and knees on the bed, and he engaged in anal intercourse. He also forced her to engage again in fellatio. Before leaving, the defendant forced the victim onto her stomach and tied her up with shoelaces that he had brought with him. The defendant cut the victim's telephone wires inside the apartment and left through a window and down a fire escape.

After waiting a short time to be certain that the defendant was gone, the victim freed herself. After discovering that her telephone wires had been cut, she called the police from a neighbor's telephone. When the police arrived they took the victim to the police station where she gave a statement. The police then took the victim to a hospital for a physical examination. The police later identified the defendant through a partial palm print that he had left on one of the envelopes in the apartment that had contained the victim's money.

I

The defendant claims that the trial court violated his right to due process by refusing to hold an evidentiary

hearing with respect to the balancing test adopted in *State* v. *Morales*, supra, 232 Conn. 707. In our earlier decision in this case, we "remanded for further proceedings to reconsider the defendant's motion to dismiss by applying the appropriate balancing test in light of *State* v. *Morales*, supra [707]." *State* v. *Coleman*, supra, 38 Conn. App. 536. The defendant argues that by refusing to consider his proffered evidence the trial court did not afford him an opportunity to address adequately the factors of the *Asherman* balancing test. The defendant also argues that the trial court improperly applied the *Asherman* balancing test. We find no merit in the defendant's claims.

"Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). There is no per se rule that an evidentiary hearing is required whenever a liberty interest may be affected. Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . *Ingraham* v. *Wright*, 430 U.S. 651, 675, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). Rather, the [s]pecific dictates of due process generally require consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [state's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

"When determining what procedures are constitutionally required, we must bear in mind that [t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and [an] opportunity to meet it. . . . Id., 348–49." (Internal quotation marks omitted.) *State* v. *Lopez*, 235 Conn. 487, 492–93, 668 A.2d 360 (1995). In other words, due process requires "notice and proceedings . . . adequate to safeguard the right for which the constitutional protection is invoked." (Internal quotation marks omitted.) *Douglas* v. *Warden*, 218 Conn. 778, 785, 591 A.2d 399 (1991).

Our Supreme Court stated in *Morales* that to decide whether the defendant was deprived of a fair trial by reason of the state's failure to preserve potentially exculpatory evidence "the trial court must employ the *Asherman* balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: 'the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence.' " *State* v. *Morales*, supra, 232 Conn. 726–27, quoting *State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). We must analyze, therefore, whether the proceedings on remand were adequate to safeguard against the violation of the defendant's due process rights by the state's destruction of potentially exculpatory evidence.

In this case, the defendant argues that, because *Morales* was decided while his appeal to this court was pending, not all of the information that is relevant to the *Asherman* balancing test had been presented when

the trial court initially considered, pursuant to the bad faith test, whether the state's destruction of evidence violated his due process rights. At the hearing on remand, the defendant proffered the following evidence in support of his motion to dismiss. The defendant first proffered the transcript of the testimony from another trial given by Carl Ladd, a geneticist from the state forensics laboratory who is an expert in deoxyribonucleic acid (DNA). Ladd's testimony was that in 1993 he had been able to perform DNA tests on samples from a sex crime kit taken in 1986. The defendant also proffered for judicial notice records from the defendant's federal habeas case to establish the chronology of the entry of certain orders. The defendant finally proffered the testimony of Thomas Farver, the trial attorney in this case, to clarify whether Farver knew that the evidence was not available when he filed a motion for a DNA test. The trial court refused to consider the defendant's proffered evidence and proceeded on the basis of the evidence that had been presented at trial and in the first hearing on the motion to dismiss.

The defendant further argues that the trial court improperly applied the *Asherman* balancing test by (1) requiring proof of the evidentiary value of the *particular* evidence that was destroyed rather than evaluating the *type* of evidence that was destroyed, (2) determining that there was no likelihood that the evidence was mistakenly interpreted, and (3) determining whether there was bad faith rather than considering the reasons for the unavailability of the evidence. We are unpersuaded. The trial court neither improperly applied the *Asherman* balancing test nor violated the defendant's due process right to an adequate proceeding by refusing to allow the defendant to introduce his proffered evidence in a full evidentiary hearing.

The trial court concluded that "the missing evidence is not material, that the analysis of the missing evidence

. . . was not wrongly interpreted, and there is no preju- dice caused to the defendant by the unavailability of said evidence. The defendant's due process rights have not been violated." In reviewing the trial court's applica- tion of the *Asherman* balancing test, we are guided by our previous decisions and those of our Supreme Court. Because the question of the defendant's due process right to have the state preserve potentially exculpatory evidence is a mixed determination of fact and law that requires the application of legal principles, our review is plenary. *State* v. *Morales*, 39 Conn. App. 617, 623, 667 A.2d 68 (1995).

The crucial question in addressing the materiality of the potentially exculpatory evidence is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (Internal quotation marks omitted.) Id. In cases such as this, a critical issue has been whether scientific tests could have been effec- tively performed on the destroyed evidence and pro- duced useful evidence. Id., 624; citing *State* v. *Asherman*, supra, 193 Conn. 726; *State* v. *Leroux*, 18 Conn. App. 223, 234–35, 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989). In this case, the trial court noted, and our review of the record confirms, that "[t]here was no evidence offered upon which it would be determined whether it could have been scien- tifically possible for the defendant to conduct tests of the anal smear or anal swab for DNA matter. It is nothing but speculation to think that the specific smear or swab in this case could have been tested for DNA matter."[12]

The defendant argues that his failure to show the value of the specific piece of destroyed evidence is not fatal to his claim. The defendant points out that he attempted to introduce evidence through the testimony

[12] The samples referred to were part of the sex crime kit.

of Ladd that scientifically useful evidence has been obtained from the *type* of evidence at issue. The defendant refers to Ladd's testimony in a separate trial that in 1993 he had been able to perform DNA tests on samples from a sex crime kit that had been taken in 1986.

In *State* v. *Asherman*, supra, 193 Conn. 726, our Supreme Court noted that "[t]he defendant offered no evidence nor made any offer of proof that the amounts of blood on the key ring and the hair were sufficient, if properly tested, to establish blood type." Likewise, in *State* v. *Morales*, supra, 39 Conn. App. 624, we noted that "[e]ven if we assume that the perpetrator wiped his penis on the victim's jacket after he assaulted her, we are left to speculate as to whether the jacket became stained, whether the stain would have indicated semen or some other substance, whether the substance would have been uncontaminated and sufficient in amount to conduct scientific testing, and whether the testing would have been effective to demonstrate that the defendant could not have been the perpetrator." These decisions make it clear that, in analyzing the materiality of the destroyed evidence, the trial court properly focused on the specific evidence at issue. See also *State* v. *Leroux*, supra, 18 Conn. App. 234–35. We conclude that because the proffered testimony of Ladd had no bearing on whether scientific tests could have been effectively performed on the destroyed evidence and produced useful evidence in this case, the trial court did not improperly refuse to consider the testimony.

Another critical factor in examining the materiality of the destroyed evidence pursuant to the *Asherman* balancing test "is the defendant's lack of interest in the evidence. *State* v. *Baldwin*, [224 Conn. 347, 365, 618 A.2d 513 (1993)]; see also *State* v. *Harden*, 175 Conn. 315, 327, 398 A.2d 1169 (1978). 'The fact that a defendant failed to request the evidence goes to the issue of materi-

ality and whether the defendant deemed it significant.' *State* v. *Morales*, supra, 232 Conn. 712 n.7." *State* v. *Morales*, supra, 39 Conn. App. 625. The defendant sought to demonstrate his interest in the evidence by offering Farver's testimony and records from the defendant's federal habeas case to establish the chronology of the entry of certain orders.

The defendant's proffered evidence would demonstrate that on December 30, 1991, the United States District Court for the District of Connecticut vacated the defendant's pleas and remanded the matter for trial. On May 8, 1992, the Court of Appeals for the Second Circuit affirmed the decision of the District Court. The defendant intended to elicit from Farver the date of his appointment to this case, the date he filed an appearance, that on June 8, 1993, he filed a motion for disclosure of evidence and to compel DNA testing, and that he learned of the destruction of the evidence on June 11, 1993. Because the defendant's proffered evidence would show that he did not consider the evidence material enough to request it prior to June 8, 1993, the trial court did not deny the defendant's due process right to an adequate proceeding by refusing to consider it.

The defendant next argues that the trial court improperly applied the second *Asherman* factor. The defendant posits that because the trial court improperly considered the evidence as tested rather than untested, it misinterpreted the missing evidence. *State* v. *Asherman*, supra, 193 Conn. 724. The trial court noted that the anal swab and smear samples from the sex crime kit had been tested and spermatozoa and seminal acid phosphatase found. The samples demonstrated, therefore, that some kind of sexual activity had occurred. The samples had not, however, been tested for DNA. The defendant has offered nothing to indicate that the trial court incorrectly interpreted the evidence or lack of evidence. In this respect, it weighs heavily against

the defendant that his case was tried to the court as opposed to a jury. *State* v. *Morales*, supra, 39 Conn. App. 626.

The defendant argues finally that the trial court improperly limited its analysis of the third factor of the *Asherman* balancing test to a consideration of the issue of bad faith and refused to consider the defendant's assertion that the state intentionally destroyed the evidence. The defendant ignores, however, that at the original hearing on the defendant's motion to dismiss the court considered the circumstances surrounding the destruction of the evidence. The court found that although the New Haven police department incorrectly thought that the June 6, 1990 destruction order included the sex crime kit, it was reasonable for the police to have believed that the kit was included.[13] At the hearing on remand, the trial court held: "As the court has already found, the police did not act in bad faith." We conclude that the trial court properly " 'focused on the motives behind the destruction of the evidence' "; *State* v. *Morales*, supra, 39 Conn. App. 626, quoting *State* v. *Leroux*, supra, 18 Conn. App. 231; in balancing the third *Asherman* factor.[14]

We conclude that the trial court properly applied the *Asherman* balancing test. In addition, the defendant was given an opportunity to be heard on his motion to dismiss and to make an offer of proof with respect to supporting his claim pursuant to our remand. See *State* v. *Lopez*, supra, 235 Conn. 497. The defendant offered no such supporting evidence, and we cannot conclude that the trial court abused its discretion by not allowing

---

[13] The destruction order provided: "Sneaker laces, telephone wire cut, telephone cord cut, jar of Vaseline, plastic bag in a plastic bag, that should all be ordered destroyed."

[14] The defendant does not argue that the trial court improperly applied the fourth factor in the *Asherman* balancing test, "the prejudice to the defendant caused by the unavailability of the evidence." *State* v. *Asherman*, supra, 193 Conn. 724.

the defendant to introduce his proffered evidence before denying his motion to dismiss. We must now address the defendant's remaining claims from his original appeal to this court.

## II

The defendant claims that the trial court improperly denied his request for a one day continuance to obtain the testimony of an alibi witness. On the last day of trial, the defendant told his counsel that a woman with whom he had lived in 1986 would testify that they were together during the early morning hours of March 4, 1986. The defendant's counsel informed the court of the defendant's assertion that a potential alibi witness existed and requested a one day continuance. The trial court denied the request, noting the age of the case and that the request was nothing more than a "dilatory" tactic by the defendant.[15] We conclude that the trial court did not abuse its discretion in denying the request for a continuance. See *State* v. *Prutting*, 40 Conn. App. 151, 168–69, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996).

## III

The defendant next claims that he was deprived of his right to a fair trial[16] because the trial court refused,

[15] Our Supreme Court has identified a list of factors that courts have considered in appellate review of matters of continuances. While not an exhaustive list, "courts have considered matters such as: the timeliness of the request for continuance; the likely length of the delay; the *age* and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; *the defendant's personal responsibility for the timing of the request;* the likelihood that the denial would substantially impair the defendant's ability to defend himself; the availability of other, adequately equipped and prepared counsel to try the case; and the adequacy of the representation already being afforded to the defendant." (Emphasis added.) *State* v. *Hamilton*, 228 Conn. 234, 240, 636 A.2d 760 (1994).

[16] "As a general proposition, a criminal defendant has the right to appear in court free from physical restraints. . . . Grounded in the common law,

over the defendant's objections, to unshackle him on the first and fourth days of his trial. " 'The negative connotations of restraints . . . are without significance unless the fact of the restraints comes to the attention of the jury.' " Id., 167, quoting *State* v. *Tweedy*, 219 Conn. 489, 508, 594 A.2d 906 (1991). Because the defendant was tried by the court, we conclude that the defendant was not deprived of a fair trial by being shackled during his trial.

## IV

The defendant next claims that his conviction of burglary in the second degree violated his constitutional right to notice. U.S. Const., amend. VI; Conn. Const., art. I, § 8. In count one of its long form information, the state charged the defendant with first degree burglary, alleging that on March 4, 1986, prior to 4 a.m., the defendant entered or remained unlawfully in a building with the intent to commit a crime therein while armed with a dangerous instrument. See General Statutes § 53a-101 (a) (1). The trial court dismissed count one, but on the state's request considered a "lesser included offense" and convicted the defendant of burglary in the second degree. We find no merit in the defendant's claim.

"[T]he defendant has a constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself." *State*

this right evolved in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtroom. . . . *State* v. *Williams*, 195 Conn. 1, 5–6, 485 A.2d 570 (1985). The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. *Estelle* v. *Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126, reh. denied, 426 U.S. 954, 96 S. Ct. 3182, 49 L. Ed. 2d 1194 (1976). *Sekou* v. *Warden*, 216 Conn. 678, 691, 583 A.2d 1277 (1990)." (Internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 505, 594 A.2d 906 (1991).

v. *Jacobowitz*, 182 Conn. 585, 590–93, 438 A.2d 792 (1981), overruled in part on other grounds, *State* v. *Welch*, 224 Conn. 1, 4, 615 A.2d 505 (1992). A defendant has adequate notice "[if] the state's pleadings . . . informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise . . . . *State* v. *Sumner*, 178 Conn. 163, 168, 422 A.2d 299 (1979)." (Internal quotation marks omitted.) *State* v. *Ballas*, 180 Conn. 662, 664, 433 A.2d 989 (1980); *State* v. *Roque*, 190 Conn. 143, 154, 460 A.2d 26 (1983). The defendant argues that he did not have adequate notice of the charge of burglary in the second degree because it is not a lesser included offense of burglary in the first degree. The state contends that because the information alleged that the crime occurred prior to 4 a.m., the defendant was notified that the crime occurred at night.

"There are [separate] tests comparing one crime with another to determine if one is a lesser included offense of the other or if the two are separate crimes. See *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980). 'The test for determining whether one crime is a lesser included offense of another crime is whether it is possible to commit the greater offense *in the manner described in the information or bill of particulars* without having first committed the lesser.' *State* v. *Hodge*, 201 Conn. 379, 385, 517 A.2d 621 (1986); *State* v. *Whistnant*, supra, 584. The lesser included offense doctrine implicates notice requirements of due process. *State* v. *Hudson*, 14 Conn. App. 472, 476–77, 541 A.2d 539 (1988)." (Emphasis added.) *State* v. *Falcon*, 26 Conn. App. 259, 264, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992).

"On the other hand, '[u]nder the *Blockburger* test, "a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an

element not found in the other." ' *State* v. *Tweedy,* [supra, 219 Conn. 495]. The separate offense doctrine implicates double jeopardy concerns." *State* v. *Falcon,* supra, 26 Conn. App. 264; see also *State* v. *Guess,* 39 Conn. App. 224, 238–39, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995).

The defendant incorrectly relies on the separate offense doctrine. The defendant asserts that burglary in the second degree requires proof that the offense occurred at night while burglary in the first degree does not. Moreover, the defendant asserts, burglary in the first degree requires proof that the defendant was armed with a dangerous instrument while burglary in the second degree does not. We do not undertake a comparison of the elements of one crime to another when the notice requirement of due process is at issue.

Instead, "we must determine whether it was possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. *State* v. *Hodge,* supra, [201 Conn. 385]." *State* v. *Falcon,* supra, 26 Conn. App. 264–65. While the crime of burglary in the first degree did not require the state to allege that the defendant committed the crime at night, it is clear that the state did allege that fact in the information by stating that the crime occurred on March 4, 1986, prior to 4 a.m. We conclude, therefore, that it was not possible for the defendant to commit burglary in the first degree, in the manner described in the information, without first having committed burglary in the second degree. See *State* v. *Jacobowitz,* supra, 182 Conn. 593.

Under these circumstances, the defendant cannot complain that he was not aware of the state's nighttime burglary theory. *State* v. *Roque,* supra, 190 Conn. 156. " 'As the state's pleadings here informed the defendant of the charge against him with sufficient precision to

enable him to prepare his defense and to avoid prejudicial surprise . . . they have performed their constitutional duty.' " Id.; see *State* v. *Williams*, 205 Conn. 456, 465–66, 534 A.2d 230 (1987) (defendant's waiver of right to jury trial for burglary in first degree constituted waiver for burglary in second degree charged in substitute information "because a defendant is deemed to be on notice that a charge of the more serious offense encompasses the lesser offenses"); see also *State* v. *Martin*, 187 Conn. 216, 219, 445 A.2d 585 (1982); *State* v. *Jacobowitz*, supra, 182 Conn. 591.

V

The defendant next claims that the evidence was insufficient to support his conviction of burglary in the first degree. Burglary in the first degree as charged in this case requires proof that the defendant entered or unlawfully remained in a building with the intent to commit a crime therein and, in the course of committing that offense, he intentionally, knowingly or recklessly inflicted bodily injury on another person.[17] The defendant argues that his conviction should be vacated because there is no evidence that he inflicted "bodily injury" on the victim. We disagree.

Neither § 53a-101 (a) nor Connecticut case law defines "bodily injury." In *State* v. *Havican*, 213 Conn. 593, 569 A.2d 1089 (1990), nevertheless, we find support for concluding that a sexual assault causes bodily injury. In *State* v. *Havican*, supra, 603, our Supreme Court held that the trial court improperly failed to instruct the jury that the defendant could use deadly physical force if necessary to repel a forcible sexual assault. Pursuant to General Statutes § 53a-19 a person is justified in using deadly physical force if the person reasonably believes that another person was (1) using or about to use deadly physical force or (2) inflicting

---

[17] See footnote 2.

or about to inflict great bodily harm. Our Supreme Court concluded that the common law provided that a person could justifiably use deadly force in self-defense of sodomy and rape because those offenses cause great bodily harm, and that § 53a-19 codified the common law rule. *State* v. *Havican,* supra, 599.

The injuries caused by sexual assaults "often far exceed physical injuries in duration and in their impact on the victim's life. ' "Short of homicide, [sexual assault] is the 'ultimate violation of self.' It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Sexual assault] is very often accompanied by physical injury to the [victim] *and can also inflict mental and psychological damage.*" *Coker* v. *Georgia,* 433 U.S. 584, 597–98, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977).' . . . *State* v. *Havican,* [supra, 213 Conn. 599 n.3]." (Emphasis in original.) *State* v. *Horne,* 215 Conn. 538, 550, 577 A.2d 694 (1990).

In this case, the trial court found that "[i]n the course of committing the offense [the defendant] intentionally and knowingly inflicted bodily injury on the victim in that he compelled her to submit to anal intercourse." The defendant does not challenge the sufficiency of the sexual assault evidence. We conclude that the defendant inflicted bodily injury on the victim by forcing the victim to engage in anal intercourse.[18]

## VI

The trial court sentenced the defendant to twenty years for his conviction of burglary in the first degree.

---

[18] The trial court further found that the sexual assault "caused pain, and that is sufficient to meet the requirements of bodily injury under that section of the statute." The defendant argues that the record is bereft of any evidence of pain, and the trial court improperly inferred that the act of anal intercourse caused pain. The defendant also argues that even if the trial court reasonably inferred pain, pain does not satisfy the definition of bodily injury. In view

The trial court also sentenced the defendant to ten years for his conviction of burglary in the second degree, which was to run concurrent with his sentences on all other counts. The defendant claims that sentencing on multiple convictions for a single burglary constitutes double jeopardy.[19] We disagree.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause protects a defendant from multiple punishments for the same offense. *State* v. *Ives*, 37 Conn. App. 40, 49, 654 A.2d 789, cert. denied, 234 Conn. 906, 659 A.2d 1209 (1995), citing *State* v. *Lonergan*, 213 Conn. 74, 78–79, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). "To be entitled to this type of double jeopardy protection, the defendant must satisfy both prongs of a two prong test. . . . First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Ives*, supra, 49; see also *State* v. *DePastino*, 228 Conn. 552, 571–72, 638 A.2d 578 (1994).

In determining whether the crimes arose out of the same act or transaction, we refer to the language of the information. *State* v. *Roy*, 34 Conn. App. 751, 768, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995); *State* v. *Raymond*, 30 Conn. App. 606, 611, 621 A.2d 755 (1993); *State* v. *Nita*, 27 Conn. App. 103, 113, 604 A.2d 1322, cert. denied, 222

of our conclusion that sexual assault causes bodily injury, we do not need to reach these aspects of the defendant's claim.

[19] Although the state has agreed with the defendant that the defendant's sentencing violates his right not to be placed in double jeopardy, we are not bound by the state's concession.

Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992). The information alleged that "prior to 4:00 a.m., in the area of 625 Orange Street, the said Charles Coleman entered or remained unlawfully in a building with the intent to a crime therein (to wit: a sexual assault and/or theft), and he was armed with a dangerous instrument . . . in violation of section 53a-101 (a) (1) . . . ."[20] The information further alleged that "prior to 4:00 a.m., in the area of 625 Orange Street, the said Charles Coleman entered or remained unlawfully in a building with the intent to commit a crime therein (to wit: a sexual assault and/or theft) and, in the course of committing that offense, he intentionally, knowingly or recklessly inflicted or attempted to inflict bodily injury on another person, in violation of section 53a-101 (a) (2) . . . ." Both charges could fairly be construed as resulting from a single burglary in which the defendant committed either a sexual assault or a theft. Because the information charges the defendant with two counts of burglary by performing acts at the same place at the same time, "but fails to state the nature of the alleged acts with sufficient particularity to determine whether they are in fact the same act or transaction, we construe the ambiguity in favor of the defendant and conclude that the charges arise out of the same act or transaction for double jeopardy purposes. See *State* v. *Goldson*, 178 Conn. 422, 425, 423 A.2d 114 (1979); *State* v. *Flynn*, [14 Conn. App. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988)]." *State* v. *Nita*, supra, 114.

Our next inquiry is whether the two offenses are the same for double jeopardy purposes. Id. " 'The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52

---

[20] On the basis of this charge, the defendant was convicted of burglary in the second degree. See part IV of this opinion.

S. Ct. 180, 76 L. Ed. 306 (1932).' *State* v. *Chicano*, 216 Conn. 699, 706–707, 584 A.2d 425 (1990) [cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991)]. Under the *Blockburger* test, 'a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other.' *State* v. *Vass*, 191 Conn. 604, 615, 469 A.2d 767 (1983); see *State* v. *Greco*, 216 Conn. 282, 291, 579 A.2d 84 (1990)." *State* v. *Tweedy*, supra, 219 Conn. 495. "The term 'element' as used in the *Blockburger* analysis . . . means any fact that the legislature has deemed essential to the commission of the crime." *State* v. *Woodson*, 227 Conn. 1, 10, 629 A.2d 386 (1993).

The crimes of burglary in the first degree in violation of § 53a-101 (a) (2) and burglary in the second degree in violation of § 53a-102 each contain an element that the other does not. In order to convict the defendant of burglary in the first degree, the state had to prove that the defendant "inflict[ed] or attempt[ed] to inflict bodily injury" on another person. General Statutes § 53a-101 (a) (2); see *State* v. *Maxwell*, 29 Conn. App. 704, 711–12, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, 509 U.S. 930, 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993). In order to convict the defendant of burglary in the second degree, the state had to prove that the defendant committed the crime at "night." General Statutes § 53a-102; *State* v. *Zayas*, 195 Conn. 611, 613, 490 A.2d 68 (1985). " '[T]he focus must be on the offenses and whether each offense requires proof of a fact that the other does not.' " *State* v. *Walton*, 227 Conn. 32, 53–54, 630 A.2d 990 (1993). Because each statute requires proof of an element that the other does not, we conclude that the offenses are not the same for double jeopardy purposes.

"The *Blockburger* test is a rule of statutory construction and its application does not result in a conclusive presumption." (Internal quotation marks omitted.)

*State* v. *Nixon*, 32 Conn. App. 224, 238, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). "[A] presumption under *Blockburger* that there are two crimes which may warrant two punishments may be rebutted by showing a clear legislative intent that the two statutes be treated as one for double jeopardy purposes. *State* v. *Russell*, 25 Conn. App. 243, 251, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Roy*, supra, 34 Conn. App. 771. The defendant has made no effort to rebut the presumption created by the application of the *Blockburger* test.[21] See *State* v. *Ford*, 33 Conn. App. 143, 147–48, 634 A.2d 1188 (1993), rev'd in part on other grounds, 230 Conn. 686, 646 A.2d 147 (1994) (no double jeopardy violation when defendant sentenced on robbery in first degree and robbery in second degree); see also *State* v. *Delgado*, 19 Conn. App. 245, 255, 562 A.2d 539 (1989) (burglary in first degree and criminal trespass in first degree). We conclude that there was no double jeopardy violation.

## VII

The defendant next claims that the evidence was insufficient to support his conviction of unlawful restraint in the first degree.[22] The defendant claims that

---

[21] The defendant cites *State* v. *Chicano*, supra, 216 Conn. 699, in support of his claim. We note that *Chicano* stands for, inter alia, the proposition that a defendant's rights under the double jeopardy clause are violated by convictions and sentencing for both felony murder and manslaughter in the first degree. Id., 710. Our Supreme Court held that "the legislature intended that manslaughter in the first degree and felony murder 'should be treated as a single crime for double jeopardy purposes.' " Id., 708, quoting *State* v. *John*, 210 Conn. 652, 695, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). The defendant fails to offer any reason why *Chicano* dictates the same result for convictions and sentencing for both burglary in the first degree and burglary in the second degree.

[22] The defendant appeals from the trial court's denial of his motion for a judgment of acquittal.

the state failed to prove beyond a reasonable doubt that the defendant restrained the victim "under circumstances which expose[d her] to a substantial risk of physical injury." General Statutes § 53a-95 (a).[23] We find no merit in the defendant's claim.

In reviewing a sufficiency claim, we employ a two part analysis. *State* v. *Finley*, 34 Conn. App. 823, 826, 644 A.2d 371, cert. denied, 231 Conn. 927, 648 A.2d 880 (1994). "The court must construe the evidence in a light most favorable to sustaining the verdict, and then determine from that evidence, and all the reasonable inferences that flow from it, whether the trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. . . . Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 38 Conn. App. 731, 743–44, 663 A.2d 1078 (1995).

The trial court found that "the defendant did restrict the victim's movement intentionally and unlawfully in such a manner as to interfere substantially with her liberty, confining her on the bed by tying her without her consent with shoelaces which he had brought with him. The restraining took place under circumstances that exposed the victim to a substantial risk of physical injury as that term is defined under our statutes, that is physical injury means impairment of physical condition or pain."[24]

The defendant argues that because the defendant restrained the victim for only a short period of time on her own bed while he made his escape, the circumstances did not pose a substantial risk of physical injury. A review of the evidence reveals that the defendant

---

[23] See footnote 4; *State* v. *Palmer*, 206 Conn. 40, 54, 536 A.2d 936 (1988).
[24] See General Statutes § 53a-3 (3).

exited the victim's apartment through a window and went down a fire escape. The victim did not immediately untie herself because she was not sure that the defendant had gone. The defendant had told the victim, when he first woke her up, not to move if she did not want to get hurt. Only after the victim was confident that the defendant had gone did she untie herself and call the police.

Where the evidence demonstrates that had the victim struggled and resisted, she might have been seriously injured, the trier of fact could find that the defendant restrained the victim under circumstances that posed a substantial risk of physical injury. *State* v. *Monk*, 198 Conn. 430, 434, 503 A.2d 591 (1986); *State* v. *Fields*, 31 Conn. App. 312, 331, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993); see also *State* v. *Parham*, 174 Conn. 500, 506–507, 391 A.2d 148 (1978) (victim tied to post in her garage and left there until able to free herself). The defendant had caused the victim to fear that if she moved she would be hurt. The defendant had sexually assaulted the victim four times, and the victim was restrained while the defendant left through a window and down the fire escape. Our review of the record reveals that the trier of fact had ample evidence to conclude reasonably that the defendant exposed the victim to a substantial risk of physical injury.

## VIII

The defendant next claims that the trial court acted vindictively when it sentenced the defendant to 110 years in prison in violation of his rights to due process as guaranteed by the fourteenth amendment to the United States constitution[25] and article first, §§ 8 and 9, of the

[25] The fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State

Connecticut constitution.[26] The trial court originally sentenced the defendant to thirty-five years in prison on the charges in this case.[27] The United States District Court for the District of Connecticut vacated the defendant's pleas and remanded the matter for trial.[28] The defendant pleaded not guilty to all counts and elected to be tried by the court. The trial court found the defendant guilty on seven of the eight counts as charged and on one lesser included offense. The trial court sentenced the defendant to 110 years in prison.[29]

In *North Carolina* v. *Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the United States

deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[26] The constitution of Connecticut, article first, § 8, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[27] The defendant was sentenced to ten years for burglary in the first degree, twenty years for each of four counts of sexual assault in the first degree concurrent with each other, and five years for robbery in the third degree. The defendant was also sentenced following his guilty pleas to charges stemming from eight other files. The sentences from the other files were all to run concurrent with the effective sentence of thirty-five years imposed on the charges from the file involved in this case.

[28] The United States Court of Appeals for the Second Circuit subsequently affirmed the decision of the District Court.

[29] The trial court sentenced the defendant to ten years in prison for burglary in the second degree, twenty years for burglary in the first degree, five years for unlawful restraint in the first degree, twenty years for each of four counts

Supreme Court declared: "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear." Id., 726. "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by ' "objective information . . . justifying the increased sentence." ' *Texas* v. *McCullough*, 475 U.S. 134, 142, [106 S. Ct. 976, 89 L. Ed. 2d 104] (1986) (quoting *United States* v. *Goodwin*, 457 U.S. 368, 374 [102 S. Ct. 2485, 73 L. Ed. 2d 74] (1982)." *Alabama* v. *Smith*, 490 U.S. 794, 798–99, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989); see also *State* v. *Taylor*, 207 Conn. 109, 113–14, 540 A.2d 64 (1988).

The situations in which the prophylactic *Pearce* presumption has been held to apply, however, have been limited by subsequent case law. See *State* v. *Taylor*, supra, 207 Conn. 114–15, and cases cited therein. "The decision in *North Carolina* v. *Pearce*, supra [395 U.S. 711], was only premised on the apparent need to guard against *vindictiveness* in the resentencing process. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Taylor*, supra, 115. The presumption applies, therefore, "only in cases in which a reasonable likelihood of vindictiveness exists. . . ." (Citations omitted; internal quotation marks omitted.) Id.

of sexual assault in the first degree, and five years for robbery in the first degree. The two burglary convictions were combined and the ten year sentence for burglary in the second degree runs concurrent with each of the other counts, each of which was to be served consecutively.

In *Alabama* v. *Smith,* supra, 490 U.S. 801, the United States Supreme Court held that "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." The court reasoned that "[e]ven when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." Id. In other words, "in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation. . . . Finally, after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." Id. The *Pearce* presumption, therefore, does not apply to the defendant's situation in this case under federal law.

Nevertheless, the defendant claims that the *Pearce* presumption, or at least a modified form of the presumption, should be recognized under the Connecticut constitution. The defendant argues that we should examine the circumstances of each case to determine whether the presumption should apply, and that the 110 year sentence imposed in this case raises a presumption of vindictiveness. The defendant further argues that it is not unreasonable to require a judge imposing a higher sentence to state on the record the reasons for the higher sentence.

For support, the defendant relies on case law from other jurisdictions. First, the defendant points out that in *San Roman* v. *State,* 815 S.W.2d 785, 789 (Tex. Crim. App. 1991), the Court of Appeals of Texas reversed the defendant's seventy-five year sentence because the defendant had twice before been sentenced to only fifty years. In *San Roman,* however, the defendant had first

been sentenced following a jury trial and then pursuant to a plea agreement. Id., 787. The requirements articulated in *Pearce* that the trial court state on the record the reasons for the increased sentence, therefore, applied in *San Roman* only because the defendant received a greater sentence after his second trial than he did after his first trial. Id., 789.

The defendant next points to *Johnson* v. *United States*, 628 A.2d 1009, 1013–14 (D.C. 1993), in which the District of Columbia Court of Appeals stated that "a case by case determination is required to determine whether the presumption of vindictiveness is appropriate. The determination rests on an evaluation of whether there is concern about 'institutional interests that might occasion higher sentences by a judge desirous of discouraging what he [or she] regards as meritless appeals.' *Texas* v. *McCullough*, [supra, 475 U.S. 138–39] . . . ." (Citation omitted.) We note that that case was "the exact opposite of *Alabama* v. *Smith*, supra, 490 U.S. 794 . . . since the trial preceded the plea." *Johnson* v. *United States*, supra, 1014. The *Johnson* court, therefore, considered different institutional concerns than those before us in this appeal. We conclude that the defendant has not provided us with any support for his claim that the *Pearce* presumption should apply to this case under the Connecticut constitution.

Moreover, our Supreme Court's decision in *State* v. *Taylor*, supra, 207 Conn. 109, persuades us that the Connecticut constitution does not require the *Pearce* presumption to apply to the situation in this case. In *Taylor*, the court held that the presumption did not apply where a sentencing court imposed a greater sentence after a habeas court found that the defendant's "rights had been prejudiced by the imposition of an effective sentence greater than that agreed to, and ordered the court to vacate the sentences and either

impose an effective sentence [in accordance with the agreement], or allow the defendant to withdraw his pleas." Id., 112.[30] The court stated that there was no realistic motive for vindictive sentencing in the sentencing court's action. Id., 117. In addition, the court stated: "We decline to expand upon the doctrine established in *North Carolina* v. *Pearce*, [supra, 395 U.S. 711]." *State* v. *Taylor*, supra, 113 n.9. Because the defendant has failed to provide any authority, and we have not located any, that institutional interests dictate that we should presume a trial court acted vindictively where a defendant is tried and given a greater sentence than the defendant received following an earlier defective plea canvass, we decline so to conclude under the Connecticut constitution.

"Where the *Pearce* presumption does not apply, the defendant must prove that vindictiveness actually occurred in the resentencing procedure, in order to obtain relief." Id., 117. The defendant argues that "the tremendous increase in the sentence, and the fact that it is so disproportionate to the sentences imposed in similar cases . . . demonstrate actual vindictiveness." We conclude, however, that the defendant must show more than that the trial court increased his sentence in order to demonstrate actual vindictiveness. " '[T]he evil the [*Pearce*] Court sought to prevent' was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.' [*Texas* v. *McCullough*, supra, 475 U.S. 138]. See also *Chaffin* v. *Stynch-*

---

[30] In *State* v. *Taylor*, supra, 207 Conn. 109, the defendant pleaded guilty to three charges and agreed with the state on a recommendation of a sentence of no more than three years, with the defendant retaining the right to withdraw his pleas if the decision of the sentencing court should exceed the agreement. Id., 116. The sentencing court imposed an effective sentence of five years, suspended after two and one-half years, with probation for three years, a sentence that the habeas court determined was greater than three years. Id. On remand from the habeas court, the sentencing court imposed an effective sentence of three years. Id., 117.

*combe,* 412 U.S. 17, 25 [93 S. Ct. 1977, 36 L. Ed. 2d 714] (1973) (the *Pearce* presumption was not designed to prevent the imposition of an increased sentence on retrial 'for some valid reason associated with the need for flexibility and discretion in the sentencing process,' but was 'premised on the apparent need to guard against vindictiveness in the resentencing process')." *Alabama* v. *Smith,* supra, 490 U.S. 799.

## IX

The defendant claims finally that he was given a disproportionate sentence in violation of his right not to be subjected to cruel and unusual punishment under the eighth and fourteenth amendments to the United States constitution[31] and his right to due process under article first, §§ 8 and 9, of the Connecticut constitution.[32] The defendant argues that he has a right to have this court compare his sentence to the sentences of other prisoners with multiple sexual assault convictions. We disagree.

The United States Supreme Court has clearly stated that the sort of proportionality review that the defendant seeks is not required by the federal constitution. *Pulley* v. *Harris,* 465 U.S. 37, 43–44, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). The defendant's claim based on the Connecticut constitution has also been addressed. "It is well established that when the sentence imposed is within the limits fixed by statute for the offenses charged, an appellate claim that the sentence is excessive is nothing more than an appeal for clemency and a request that this court exercise discretionary authority it did not possess. *State* v. *Nardini,* 187 Conn. 109, 127, 445 A.2d 304 (1982). . . . A petition for sentence review

---

[31] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[32] See footnote 26.

. . . is the appropriate vehicle by which to have this claim evaluated. See General Statutes [§§ 51-194 through 51-197]."[33] *State* v. *Baldwin,* supra, 224 Conn. 370–71.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[33] General Statutes § 51-195 provides in relevant part: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. . . ."