## STATE OF CONNECTICUT v. CHARLES COLEMAN (15468)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

524

Argued March 26—officially released August 19, 1997

*Temmy Ann Pieszak*, supervisory assistant public defender, for the appellant (defendant).

*Harry Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The principal issue raised by this appeal is whether a defendant who has been sentenced under the terms of a plea agreement but who later is permitted to withdraw his guilty plea and allowed to proceed to trial is entitled, following his conviction after trial, to an explanation from the trial court setting forth its reasons for imposing a greater sentence than had been imposed under the plea agreement. Following a court trial, the defendant, Charles Coleman, was convicted of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[1] burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[2] burglary in the second degree in violation

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-101 (a) provides: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

of General Statutes § 53a-102,[3] unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a),[4] and robbery in the third degree in violation of General Statutes §§ 53a-136 (a) and 53a-133.[5] The trial court rendered judgment sentencing the defendant to an effective term of imprisonment of 110 years.[6] The defendant appealed to the Appellate Court, which affirmed his convictions. *State* v. *Coleman*, 41 Conn. App. 255, 675 A.2d 887 (1996).[7] We granted the defendant's petition for certification to appeal from the Appellate Court, limited to the following issues: (1) "Did the Appellate Court improperly disregard the state's concession that, in this case, the defendant should not receive multiple punishment for his two burglary con-

[3] General Statutes § 53a-102 provides in relevant part: "(a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein. . . ."

[4] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[5] General Statutes § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[6] The trial court sentenced the defendant as follows: twenty years on each of the defendant's four convictions of sexual assault in the first degree; twenty years on his first degree burglary conviction; ten years on his second degree burglary conviction; five years on his conviction for unlawful restraint in the first degree; and five years on his conviction for third degree robbery. The sentences are to run consecutive to each other except for the ten year sentence for second degree burglary, which is to run concurrently with the sentences imposed on the other seven counts. We also note that the 110 year sentence imposed in this case is to run consecutive to a sentence already being served by the defendant.

[7] The Appellate Court originally remanded this case to the trial court for reasons unrelated to the issues raised by this appeal. *State* v. *Coleman*, 38 Conn. App. 531, 662 A.2d 150, cert. denied, 235 Conn. 906, 665 A.2d 903 (1995).

victions?" and (2) "Whether, under our supervisory powers or the state constitution, we should adopt the presumption set forth in *North Carolina* v. *Pearce*, 395 U.S. 711 [89 S. Ct. 2072, 23 L. Ed. 2d 656] (1969), pertaining to the imposition of a greater sentence after having successfully attacked his first conviction?" *State* v. *Coleman*, 237 Conn. 931, 677 A.2d 1372 (1996). Although we conclude that the defendant's second degree burglary conviction must be vacated,[8] we otherwise affirm the judgment of the Appellate Court.

The relevant facts and procedural history are set forth in the opinion of the Appellate Court. "On August 12, 1986, the defendant was arraigned on seven charges stemming from a burglary, robbery and repeated sexual assaults that occurred in the early morning of March 4, 1986. An agreement was reached in which the defendant pleaded guilty under the *Alford* doctrine[9] to the charges, as well as to charges from eight other files. Prior to sentencing, the defendant sought to withdraw all of his pleas. The trial court allowed the defendant to withdraw his plea on one count from another file, but denied his motion to withdraw his pleas in this case. The [trial court, *Ronan, J.,*] sentenced [the defendant] to thirty-five years in prison on all charges from all nine files.

"On appeal, [the Appellate Court] affirmed the trial court's refusal to allow the defendant to withdraw his plea. *State* v. *Coleman*, 17 Conn. App. 307, 552 A.2d 442 (1989). Subsequently, the defendant filed a petition for habeas corpus relief in federal court claiming that his plea canvass was defective. The United States District Court for the District of Connecticut vacated the defen-

---

[8] Because we conclude that the trial court improperly convicted the defendant of second degree burglary; see part I of this opinion; we decide the first certified question on that alternative ground. See, e.g., *Rametta* v. *Stella*, 214 Conn. 484, 491 n.6, 572 A.2d 978 (1990).

[9] "*North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)." *State* v. *Coleman*, supra, 41 Conn. App. 259 n.11.

dant's pleas and remanded the matter for trial.[10] . . . The United States Court of Appeals for the Second Circuit subsequently affirmed the decision of the District Court.[11]

"After pleading not guilty to all counts, the defendant elected to be tried by the court. . . . The trial court [*Fracasse, J.*] found the defendant guilty on seven of the eight counts as charged. On the other count, the court found the defendant guilty of the lesser included offense of burglary in the second degree. The defendant received an effective sentence of 110 years in prison. . . .

"The trial court found the following . . . facts [relative to its judgment of conviction]. The victim resided alone in a New Haven apartment. During the early morning of March 4, 1986, she was asleep with her glasses on and wearing a nightgown. Between 3:30 and 4 a.m., the defendant used a sharp cutting tool to remove a pane of glass from one of the victim's bedroom windows and entered her apartment. The victim awoke with the defendant straddling her. The defendant held his hand over the victim's mouth and told her not to move if she did not want to get hurt. The defendant told her to take off her glasses and she did so. The defendant forced her to commit fellatio as he stood next to her bed and also forced her to engage in vaginal intercourse.

"The defendant then demanded the victim's money. She had cashed her paycheck the previous day and had separated the money into envelopes, each marked for the purpose of paying various bills. The defendant ordered the victim to take the money from the envelopes and she did so. The victim estimated that she had between $500 and $600. The defendant went through

---

[10] *Coleman* v. *Commissioner of Correction,* United States District Court, Docket No. 2:91-CV0005 (D. Conn. December 30, 1991).

[11] *Coleman* v. *Commissioner of Correction,* 969 F.2d 1041 (2d Cir. 1992).

the envelopes and moved them about on the bed. The defendant asked the victim if she had any jewels or furs, and she replied in the negative. The defendant also asked her if she had a car, and she replied that she had a Datsun; he said he did not want the car.

"The defendant then ordered the victim to get on her hands and knees on the bed, and he engaged in anal intercourse. He also forced her to engage again in fellatio. Before leaving, the defendant forced the victim onto her stomach and tied her up with shoelaces that he had brought with him. The defendant cut the victim's telephone wires inside the apartment and left through a window and down a fire escape.

"After waiting a short time to be certain that the defendant was gone, the victim freed herself. After discovering that her telephone wires had been cut, she called the police from a neighbor's telephone. When the police arrived they took the victim to the police station where she gave a statement. The police then took the victim to a hospital for a physical examination. The police later identified the defendant through a partial palm print that he had left on one of the envelopes in the apartment that had contained the victim's money." (Citation omitted; internal quotation marks omitted.) *State* v. *Coleman*, supra, 41 Conn. App. 259–61. Additional facts will be set forth as necessary.

On appeal to this court, the defendant claims that he is entitled to: (1) vacation of his second degree burglary conviction; and (2) resentencing on his seven other convictions. We agree with the defendant's first claim, but we reject his second claim.

I

The first certified question is whether the Appellate Court improperly rejected the state's concession that his convictions for both first degree burglary and sec-

ond degree burglary constitute inappropriate multiple punishments for the same conduct. We need not reach that precise question because we conclude that the trial court and the Appellate Court improperly determined that second degree burglary under § 53a-102 is a lesser included offense of first degree burglary under § 53a-101 (a) (1).[12]

The following additional facts are relevant to our resolution of this issue. The state, in a third substitute information filed shortly before the commencement of trial, charged the defendant with, inter alia, one count of burglary in the first degree in violation of § 53a-101 (a) (1) and a second count of burglary in the first degree under § 53a-101 (a) (2). The defendant moved to strike the count alleging a violation of § 53a-101 (a) (1), claiming that that charge had been added improperly on the eve of trial and, further, that because that charge had not been included in the information to which the defendant originally had pleaded guilty, its inclusion in the third substitute information gave rise to an unrebutted presumption of vindictiveness under *Blackledge* v. *Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974). The state responded that it did not intend that the defendant was to be punished twice for the two burglary counts, stating, instead, that "[w]e are not dealing with a different crime, we are dealing with two alternative means of committing [the same] crime."[13] In light of the state's representations, the trial court denied the defendant's motion to strike.

---

[12] Although the defendant has not expressly renewed a lesser included offense claim on appeal to this court, we address it because it raises a threshold issue that is dispositive of the first certified question.

[13] The state also represented that it had "not added a new charge [or] increased the type of crimes for which [the defendant was] being charged". and, further, that the defendant "could not be sentenced to any additional time if a jury or a [c]ourt was to find him guilty of . . . both the first and second count, his exposure would remain the same, the same at least in the view of the [s]tate. We are talking about alternative means of committing the same crime."

At the conclusion of the trial, the court found the defendant guilty of burglary in the first degree in violation of § 53a-101 (a) (2), but it acquitted the defendant of burglary in the first degree in violation of § 53a-101 (a) (1). After concluding that under the circumstances of this case, burglary in the second degree under § 53a-102 is a lesser included offense of burglary in the first degree under § 53a-101 (a) (1), the trial court also found the defendant guilty under § 53a-102. The court then imposed a term of imprisonment of ten years for the conviction of second degree burglary in violation of § 53a-102, the sentence on that offense to run concurrently with the sentences imposed on the other seven counts.

On appeal to the Appellate Court, the defendant claimed that: (1) his conviction for second degree burglary under § 53a-102 must be reversed because it is not a lesser included offense of § 53a-101 (a) (1); and (2) in view of the state's representations to the trial court, his convictions for first degree burglary and second degree burglary violate principles of double jeopardy. Although the state maintained that § 53a-102 is a lesser included offense of § 53a-101 (a) (1), it conceded, without elaboration, that the defendant's convictions for first and second degree burglary should be combined. The Appellate Court concluded: (1) that § 53a-102 is a lesser included offense of § 53a-101 (a) (1); and (2) that the defendant's first and second degree burglary convictions do not violate principles of double jeopardy so that, notwithstanding the state's concession to the contrary, the defendant was not entitled to have the two convictions combined. Before this court, the defendant claims that the Appellate Court improperly rejected the state's concession that he should not receive multiple punishment for the two burglary convictions.[14] We con-

---

[14] Although the ten year concurrent prison term imposed by the trial court under § 53a-102 does not alter the defendant's effective sentence of 110

clude that § 53a-102 is not a lesser included offense of § 53a-101 (a) (1) and, consequently, that the trial court improperly convicted the defendant under § 53a-102.

"The constitutionality of instructing on lesser included offenses is grounded on the premise that where one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof." *State* v. *Chance*, 236 Conn. 31, 56, 671 A.2d 323 (1996). It is well established that "[t]he test for determining whether one crime is a lesser included offense of another crime is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars without having first committed the lesser." *State* v. *Hodge*, 201 Conn. 379, 385, 517 A.2d 621 (1986); see also *State* v. *Castro*, 196 Conn. 421, 428, 493 A.2d 223 (1985); *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). If so, then the lesser offense is not a lesser *included* offense of the greater offense. See *State* v. *Hodge*, supra, 385. The Appellate Court applied this test and concluded that "it was not possible for the defendant to [have committed] burglary in the first degree, in the manner described in the information, without first having committed burglary in the second degree."[15] *State* v. *Coleman*, supra, 41 Conn. App. 272.

years imprisonment, the conviction alone constitutes punishment. See, e.g., *Ball* v. *United States*, 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) (separate conviction, even if accompanied by no sentence, has collateral consequences that amount to punishment).

[15] In so concluding, the Appellate Court considered, and rejected, the sole argument raised by the defendant in support of his claim that § 53a-102 is not a lesser included offense of § 53a-101 (a) (1), namely, that § 53a-102 contains a nighttime requirement that § 53a-101 (a) (1) does not contain. See *State* v. *Coleman*, supra, 41 Conn. App. 272 ("While the crime of burglary in the first degree did not require the state to allege that the defendant committed the crime at night, it is clear that the state did allege that fact in the information by stating that the crime occurred on March 4, 1986,

We disagree with the Appellate Court because § 53a-102 requires that the burglary must have taken place in a *dwelling*, which is defined as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ." General Statutes § 53a-100 (a) (2). In contrast, under § 53a-101 (a) (1), the state need prove only, and the information in this case alleged only,[16] that the defendant had burglarized a *building*.[17] Consequently, it was possible for the defendant to have committed the crime of burglary in the first degree under § 53a-101 (a) (1) in the manner described in the information, that is, by entering a *building* with the intent to commit a crime therein, without also having committed the lesser offense of entering a *dwelling* with the intent to commit a crime therein in violation of § 53a-102. Section 53a-102, therefore, is not a lesser included offense of § 53a-101 (a) (1).[18] Accordingly, the defendant's second degree burglary conviction must be vacated.

prior to 4 a.m. We conclude, therefore, that it was not possible for the defendant to commit burglary in the first degree, in the manner described in the information, without first having committed burglary in the second degree.").

[16] Count one of the third substitute information alleged "that . . . on or about the 4th day of March, 1986, prior to 4:00 a.m., in the area of . . . Orange Street, the [defendant] entered or remained unlawfully *in a building* with the intent to commit a crime therein (to wit: a sexual assault and/or theft), and he was armed with a dangerous instrument (to wit: a sharp cutting instrument), in violation of Section 53a-101 (a) (1) of the Connecticut General Statutes." (Emphasis added.)

[17] " 'Building' in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle or any building with a valid certificate of occupancy. Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . ." General Statutes § 53a-100 (a) (1).

[18] We need not, and therefore do not, express any opinion regarding the Appellate Court's conclusion; see footnote 15 of this opinion; that the night-time requirement of § 53a-102 does not preclude a determination, in light of the information filed in this case, that § 53a-102 is a lesser included

## II

The second certified question raises the issue of whether the trial court improperly failed to articulate its reasons for imposing a more severe sentence after the defendant's trial than previously had been imposed on the defendant following his subsequently vacated guilty plea. The defendant claims that, because the court failed to explain why the longer sentence was appropriate, the increased sentence gave rise to an unrebutted presumption of vindictiveness under the due process clause of the Connecticut constitution. The defendant argues that, even if we reject his state constitutional argument, we nevertheless should exercise our supervisory authority over the administration of justice to require that a trial court, whenever it imposes a greater sentence after trial than previously had been imposed under a plea agreement, explain its reasons for doing so.[19] We need not decide and, therefore, express no opinion regarding, the defendant's state constitutional claim because we conclude, under our supervisory power, that, upon request by a defendant, a trial court should articulate its reasons for imposing a longer sentence after trial than was imposed previously pursuant to that defendant's vacated guilty plea. We also conclude, however, that because the trial court sufficiently articulated the reasons why it imposed a longer

offense of § 53a-101 (a) (1). Cf. *State* v. *Williams*, 205 Conn. 456, 463–64, 534 A.2d 230 (1987).

[19] The state argues that the defendant waived his right to challenge the increased sentence because the federal district court, prior to its decision granting the defendant's habeas petition, expressly warned him that he risked receiving a more severe sentence upon retrial. We are not persuaded by this argument. "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina* v. *Pearce*, supra, 395 U.S. 725. Thus, so to penalize a defendant for exercising a constitutionally protected right, even if the defendant previously had been advised of the possible adverse consequences of the exercise of that right, would itself be unconstitutional. See id., 724.

sentence on the defendant than originally had been imposed, the defendant is not entitled to be resentenced.

## A

We begin by reviewing *North Carolina* v. *Pearce, supra,* 395 U.S. 711, and its progeny. In *Pearce,* the United States Supreme Court "examined the constitutional constraints imposed on a court which metes out a greater sentence upon retrial than that which the defendant originally received. After holding that neither the equal protection clause nor the double jeopardy provision imposes an absolute bar to a harsher sentence upon reconviction, the court considered the impact of the due process clause on such a position. Id., 723–26. Where a conviction has been set aside, the action of a court in imposing a harsher sentence upon reconviction for the purpose of punishing a defendant for exercising his rights in seeking to have the conviction set aside is a 'flagrant' violation of due process of law. Id., 723–24. Due process requires that vindictiveness must not enter into resentencing that results from a successful attack on a defendant's conviction. Id., 725. A defendant's fear of such vindictive behavior may unconstitutionally deter the exercise of the right to appeal or to attack collaterally a conviction, and thus, due process requires that a defendant be free from such apprehension. Id. To ensure that retaliatory motivation does not enter into the resentencing process, whenever a court imposes a harsher sentence following a new trial, the court must state its reasons upon the record. Id., 726.

"The United States Supreme Court has subsequently examined the applicability of the *Pearce* presumption of vindictiveness. See, e.g., *Texas* v. *McCullough,* 475 U.S. 134, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986) (defendant originally sentenced by jury; judge concluded defendant entitled to new trial; upon retrial defendant

chose sentencing by judge; *Pearce* presumption inapplicable and even if it were to apply, court's findings overcame presumption); *Wasman* v. *United States*, 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984) (presumption of vindictiveness applies since petitioner received greater sentence following retrial than that he had originally received; consideration by court of conviction between original sentencing and sentencing after retrial rebuts presumption); *United States* v. *Goodwin*, 457 U.S. 368, 372–84, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (pretrial decision by prosecutor to modify charges does not warrant presumption of prosecutorial vindictiveness in pretrial setting); *Bordenkircher* v. *Hayes*, 434 U.S. 357, 362–64, 98 S. Ct. 663, 54 L. Ed. 2d 604 . . . (1978) (prosecutor's action in carrying through on statement made during plea negotiations to bring additional charges against defendant if he refused to plead guilty to offense originally charged did not violate due process clause); *Blackledge* v. *Perry*, [supra, 417 U.S. 25–29](prosecutor may not bring more serious charge against defendant prior to trial de novo in response to defendant's exercise of statutory right to appeal); *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 24–28, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (where resentencing occurs before . . . jury, potential for abuse in sentencing is minimal; *Pearce* does not apply); *Colten* v. *Kentucky*, 407 U.S. 104, 112–20, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) (prophylactic rule announced in *Pearce* not appropriate in context of two-tier system which allowed for trial de novo in court of general criminal jurisdiction following trial or guilty plea in an inferior court; likelihood of vindictiveness not present).

"The decision in *North Carolina* v. *Pearce, supra,* [395 U.S. 711] was only premised on the apparent need to guard against *vindictiveness* in the resentencing process. . . . [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of

a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists. *United States* v. *Goodwin,* supra, [457 U.S.] 373; *Wasman* v. *United States,* supra, [468 U.S.] 566. The *Pearce* requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. Like other judicially created means of effectuating the rights secured by the [Constitution] . . . we have restricted application of *Pearce* to areas where its objectives are thought most efficaciously served . . . . *Texas* v. *McCullough,* supra, [475 U.S.] 138.

"The violation of due process in situations such as *Pearce* and *Perry* does not arise from the possibility that a defendant may be discouraged from exercising legal rights, but instead from the danger that the State might be retaliating against the accused for lawfully attacking his conviction. *Bordenkircher* v. *Hayes,* supra, [434 U.S.] 363. [W]here the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness. *Wasman* v. *United States,* supra, [468 U.S.] 569; see *Texas* v. *McCullough,* supra, [475 U.S.] 138." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Taylor,* 207 Conn. 109, 113–16, 540 A.2d 64 (1988).

The United States Supreme Court recently revisited this issue in *Alabama* v. *Smith,* 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). *Smith* clarified the scope of the *Pearce* rule, stating that "[w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping

dimension, our subsequent cases have made clear that its presumption of vindictiveness do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." (Internal quotation marks omitted.) Id., 799. The court further explained that the application of the *Pearce* rule is limited "to circumstances where its objectives are thought most efficaciously served, [namely] those [circumstances] in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." (Citations omitted; internal quotation marks omitted.) Id. On the basis of this conclusion, the court reasoned that "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial. A guilty plea must be both 'voluntary' and 'intelligent,' *Boykin* v. *Alabama*, 395 U.S. 238, 242 [89 S. Ct. 1709, 23 L. Ed. 2d 274] (1969), because it 'is the defendant's admission in open court that he committed the acts charged in the indictment,' *Brady* v. *United States*, 397 U.S. 742, 748 [90 S. Ct. 1463, 25 L. Ed. 2d 747] (1970). But the sort of information which satisfies this requirement will usually be far less than that brought out in a full trial on the merits. . . .

"[I]n the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation. . . . See *United States* v. *Grayson*, 438 U.S. 41, 53 [98 S. Ct. 2610, 57 L. Ed. 2d 582] (1978) (sentencing authority's perception of the truthfulness of a defendant testifying on his own behalf

may be considered in sentencing). Finally, after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present. . . . In cases like the present one, [therefore], we think there are enough justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness. . . . [Accordingly] there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea . . . ." (Citations omitted; internal quotation marks omitted.) *Alabama* v. *Smith*, supra, 490 U.S. 801–803.

The defendant acknowledges that he cannot prevail under the federal constitution in light of *Smith*. He urges us, however, to reject the holding in *Smith* under the due process clause of our state constitution, and to conclude that, as a matter of state constitutional law, a presumption of vindictiveness arises even when the first sentence was based upon a guilty plea and the second sentence follows a trial.[20] We need not reach and, therefore, we express no opinion regarding, the defendant's state constitutional claim because we conclude, in the exercise of our supervisory power, that a trial court, upon a timely request by the defendant, should articulate its reasons for imposing a greater sentence after trial than previously had been imposed under the terms of a plea agreement. See part II B of this opinion. We also conclude that the trial court discharged its responsibility to do so in this case. See part II C of this opinion.

### B

"As an appellate court, we possess an inherent supervisory authority over the administration of justice. . . .

---

[20] "We have . . . determined in some instances that the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been inter-

The standards that we set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law. . . . *McNabb* v. *United States*, 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1942). Rather, the standards are flexible and are to be determined in the interests of justice. *State* v. *Ross*, [208 Conn. 156, 159, 543 A.2d 284 (1988)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 230 Conn. 385, 397–98, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996). We previously have exercised our supervisory powers "to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 528, 668 A.2d 1288 (1995). Rules adopted under our inherent supervisory authority have included articulation requirements intended to benefit the parties and to ensure a proper record for appellate review. See, e.g., *State* v. *Breton*, 235 Conn. 206, 250, 663 A.2d 1026 (1995) (special verdict form submitted to jury in capital sentencing case must include brief statement of jury's responsibility for determining whether defendant is sentenced to death); *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989) (where defendant asserts claim under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 [1986], state must make prima facie showing of neutral jury selection method). Although we never expressly have exercised our supervisory power in regard to the sentencing function, other courts have done so when appropriate to ensure the fair administra-

preted by the United States Supreme Court." *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990).

tion of justice at that important stage of a criminal proceeding. See, e.g., *United States* v. *Ming He*, 94 F.3d 782 (2d Cir. 1996); *United States* v. *Herrera-Figueroa*, 918 F.2d 1430 (9th Cir. 1990); see also *United States* v. *Perez*, 904 F.2d 142 (2d Cir. 1990).

Although we express no opinion, for state constitutional purposes, as to whether a presumption of vindictiveness attaches where a defendant previously has been sentenced under the terms of a plea agreement and, having successfully challenged his conviction, receives a greater sentence following a trial, we are persuaded that such a defendant should be afforded an explanation, if one is requested, justifying the enhanced sentence.[21] An important function of this court is to ensure public confidence in the integrity of the judicial system. This confidence is enhanced through the enactment of rules that safeguard the fairness of our system of justice. A requirement that the trial court articulate the objective criteria upon which it relied in imposing a greater sentence will promote public confidence in the fair and impartial administration of justice by dispelling concerns that the subsequent sentence was the product of prosecutorial or judicial vindictiveness.

The rule we adopt today dispels these concerns in two important respects. First, it aids in the "eliminat[ion of] even the possibility of retaliation so that the defendant will have no apprehension about exercising the right of appeal." *State* v. *Thompson*, 158 Vt. 452, 457–58, 613 A.2d 192 (1992). Second, because "it is [usually] exceedingly difficult to establish that a judge has retali-

[21] We nonetheless acknowledge the force of the arguments that caused the United States Supreme Court in *Alabama* v. *Smith*, supra, 490 U.S. 801–803, to conclude that a presumption of vindictiveness does not arise when a greater sentence is imposed after trial than had been imposed pursuant to a subsequently vacated guilty plea. We need not decide that question under the state constitution, however, and accordingly, we intimate no view regarding that question.

ated against a defendant for exercising legal rights"; *Commonwealth* v. *Walker*, 390 Pa. Super. 76, 81, 568 A.2d 201 (1989); see also *United States* v. *Perez*, supra, 904 F.2d 146 ("this court recognizes . . . that it is not always easy to demonstrate actual vindictiveness"); the rule ensures that there will be an adequate record for appellate review of a defendant's claim of retaliation.

Moreover, the rule places little, if any, additional burden on trial judges, who frequently are asked to articulate the reasons underlying particular sentencing decisions. Furthermore, the number of cases in which the rule will be applicable is likely to be extremely small. For these reasons, we invoke our supervisory authority to require trial courts to explain, upon request by a defendant, their reasons for imposing a greater sentence after trial than previously had been imposed under the terms of a plea agreement.[22]

C

We must now determine whether the record reflects that Judge Fracasse expressly relied on facts and circumstances warranting the increased sentence. We conclude that Judge Fracasse's sentencing comments adequately explained his decision to impose a greater sentence on the defendant than had been imposed by Judge Ronan.[23]

[22] The defendant never expressly requested that Judge Fracasse articulate his reasons for imposing a greater sentence than had Judge Ronan. The defendant, however, did refer the court to *Pearce* when arguing that the court could not impose a sentence exceeding the sentence previously imposed by Judge Ronan. See footnote 23 of this opinion. In light of *Pearce*'s holding that courts must give their reasons for imposing a greater sentence in circumstances where a presumption of vindictiveness arises, and because the state has not objected to our consideration of the defendant's supervisory authority claim, we assume, without deciding, that the defendant's invocation of *Pearce* sufficiently alerted the trial court of his claim that an articulation of its reasons for imposing a greater sentence was necessary.

[23] At the sentencing hearing before Judge Fracasse, the defendant, relying on *Pearce*, argued that, in light of the sentencing factors relevant to this case, the court properly could not impose a sentence exceeding the thirty-

We review the record keeping in mind the factors that a trial court properly may take into consideration in deciding whether a greater sentence than previously had been imposed is appropriate. "A trial judge is not . . . precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's life, health,

five year prison term previously imposed by Judge Ronan, following the defendant's guilty plea. The defendant renews these arguments on appeal. The defendant maintains that because Judge Ronan indicated that the sentence he imposed on the defendant under the terms of the plea agreement appeared to be appropriate, any increase in that sentence after trial cannot be justified. The defendant further argues that when Judge Ronan reached his conclusion regarding the apparent propriety of the plea bargain, Judge Ronan had a complete understanding of the gravity of the defendant's conduct. Specifically, he cites Judge Ronan's comments, prior to sentencing, that, for at least a year, the defendant had constituted a "one-man crime wave," leaving in his wake a trail of "ugly memories and scars [in] the minds and lives" of each victim. We are not persuaded by the defendant's claim that Judge Ronan's statements precluded Judge Fracasse from imposing a greater sentence than was imposed under the plea agreement. Judge Ronan merely indicated that he had agreed to sentence the defendant in accordance with the plea bargain "*based on what I know now*, my discussions and my review of the cases with [defense counsel] and the [s]tate's [a]ttorney . . . ." (Emphasis added.) Judge Ronan's sentencing comments merely reflect the fact that, in light of the defendant's willingness to accept responsibility for his offenses by pleading guilty, the bargained-for thirty-five year sentence appeared to be appropriate based upon the information then available to Judge Ronan. See *Corbitt* v. *New Jersey*, 439 U.S. 212, 219–20, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978) ("[A] [s]tate may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant the possibility or certainty . . . [not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty . . . but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury." [Citations omitted; internal quotation marks omitted.]). As we indicate later in this opinion, Judge Fracasse had substantially more, and more detailed, information available to him at the time of sentencing than Judge Ronan had, including a clearer picture of the severity—indeed, brutality—of the defendant's criminal conduct, his lack of veracity, his lack of remorse and his refusal to take responsibility for his actions. Finally, institutional considerations militating in favor of leniency; see, e.g., *Brady* v. *United States*, supra, 397 U.S. 752; *United States* v. *Perez*, supra, 904 F.2d 147; disappeared when the defendant elected to proceed to trial.

habits, conduct, and mental and moral propensities. . . . Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." (Citation omitted; internal quotation marks omitted.) *North Carolina* v. *Pearce*, supra, 395 U.S. 723. Thus, evidence adduced at trial detailing the nature and extent of the offenses charged, as well as the defendant's conduct during the trial and his veracity as a witness, are among the considerations that the sentencing court may take into account in deciding whether to deviate from the original sentence. See *Alabama* v. *Smith*, supra, 490 U.S. 801. "In addition, many factors favor relative leniency for those who acknowledge their guilt—often expressing remorse—and thus help conserve scarce judicial and prosecutorial resources for those cases that merit the scrutiny afforded by a trial. See *Brady* v. *United States*, [supra, 397 U.S. 752]." *United States* v. *Perez*, supra, 904 F.2d 147. Conversely, these institutional considerations do not support leniency for a defendant who is sentenced after a trial.

It is apparent from the record in the present case that the trial court considered these factors in concluding that an increased sentence was appropriate. Judge Fracasse first indicated that the defendant's successful challenge to the judgment of conviction stemming from his guilty plea bore no relevance to the sentence that he intended to impose.[24] Judge Fracasse also expressly stated that he had considered the principles enunciated in *North Carolina* v. *Pearce*, supra, 395 U.S. 711, and *Alabama* v. *Smith*, supra, 490 U.S. 794, and that in light of those principles, he did not consider himself bound

[24] It is also noteworthy that a different judge sentenced the defendant after trial than had sentenced him following his guilty plea. This fact alone substantially reduces the possibility that the subsequent sentence will be viewed as vindictive. See *Texas* v. *McCullough*, supra, 475 U.S. 140.

by the thirty-five year sentence previously imposed on the defendant by Judge Ronan.[25] Judge Fracasse then stated that "[a] just sentence should be imposed in this case, bearing in mind the nature of the criminal conduct, its gravity, its impact on the victim and society, the dangerousness of the defendant to society, the defendant's prior criminal record, all reliable information which may assist the court as contained in the presentence investigation and all comments of counsel, the defendant and the victim at the sentencing hearing."

Judge Fracasse next reviewed the defendant's criminal record, which included an offense for which the defendant had been tried and convicted subsequent to the date of his sentencing by Judge Ronan. As Judge Fracasse noted, that conviction stemmed from a knife assault that the defendant had committed on a female victim following his forced entry into the victim's home, and resulted in a prison term of twenty years.[26]

Judge Fracasse also discussed the evidence adduced at trial. He took particular note of the severity of the crime and its impact on both the victim and society, stating that "[t]hese criminal acts are matters of grave concern to the victim and to the public." In recognizing the impact that the crime had on the victim, Judge Fracasse stated that "[t]he acts of burglary have violated the security of the victim's home. The acts of robbery [have violated] the victim by taking her property. The acts of restraint have violated the victim's freedom and exposed her to substantial risk of injury. And the four acts of sexual assault have violated the victim in a

---

[25] As we have indicated, the defendant claimed that *Pearce* prohibited a sentence exceeding that which originally had been imposed by Judge Ronan. The state filed a sentencing memorandum in which it detailed the reasons why Judge Fracasse was not bound by the previously imposed sentence.

[26] As Judge Fracasse also noted, the incident underlying that offense comprised "one of the files which was disposed of by the vacated conviction of July 17, 1987, which was based on the plea agreement of May 27, 1987."

most personal and harmful manner. As a result of these criminal acts, the victim has sustained emotional and physical harm which continues today. She was terrorized by the defendant's criminal conduct in this case. She continues to suffer from that fearful experience." Judge Fracasse also found that the defendant posed a "danger to society." In addition, Judge Fracasse expressly found the defendant's "testimony during trial to be untruthful." Finally, Judge Fracasse indicated that in light of all of the relevant considerations, "[t]here is no reason to ameliorate the sentence to be imposed."

These conclusions are well founded in the trial record, the presentence investigation report and the sentencing hearing, which brought to light for the first time significant details regarding the defendant's offenses, the defendant's demeanor and credibility and the effect of the crime on the victim. At trial, the victim testified about the repeated and violent nature of the sexual assaults and, at the sentencing hearing, she recounted the devastating effects that the defendant's actions have had on her physical and emotional well-being.[27] Furthermore, the defendant committed perjury

---

[27] The victim stated as follows at the sentencing hearing: "This morning I wanted to address Your Honor and the court to kind of explain myself, the devastating effect that this crime has had on my life. Even though it's been seven years, it still affects my daily existence. The emotional and physical effects are still there. They have lessened somewhat in time. But therapy and medication may be something that I will need for the rest of my life. The financial strain that it's put on me with out-of-pocket medical expenses and the effect it's had on the further advancement of my career is hard to put in dollars and cents. But I think the most devastating thing is the terror and the fear as well as the pain of the sexual acts that I experienced that morning. And it's still with me. And I don't think that I'll ever feel . . . completely safe again from this experience.

"And the other effect for me that's been the most devastating is that the chunk of time it's taken out of my life to recover and to put my life back together. When this happened, I was in my early thirties. And getting married and starting a family are things that probably would have happened. And I'm almost forty now and I can't say whether those things will happen. They may be life events that I won't experience. And that saddens me a great deal.

at trial and, at the sentencing proceeding, he persisted in refusing to accept responsibility for his conduct, stating that the authorities had convicted "the wrong person."

In contrast to the original presentence report that was submitted to Judge Ronan,[28] the presentence report submitted to Judge Fracasse contains a detailed, four page description of the defendant's offense and its effect on the victim. Indeed, the second presentence report, unlike the original version, contains a thorough recitation of the offense conduct, including the following: the sequence of the assaults; the defendant's threat against the victim; the method by which the defendant gained entry into the victim's apartment; the details of the victim's restraint by shoelaces; and the fact that the defendant had isolated the victim by cutting her phone wires. Moreover, the discussion of the victim's attitude contained in the second presentence report, in contrast to that contained in the original report, includes a graphic written statement by the victim regarding the offense;[29] an account of the psychological disorders that

"But I would also like to speak on behalf of the victims in that the effect that the appeal and the delays have because it reactivates all the old terror and fear and I think sense of powerlessness that you feel when it happens to you the first time and it's hard to explain to your family and to your friends and to yourself why, after seven years, something still affects you so deeply. And it's a really lonely feeling and I can't—I have no control over the events that took place on March 4, 1986. I can't change them. But I can appeal to the court to impose the maximum amount of incarceration for the defendant and I thank the court for letting me speak this morning."

[28] That report summarizes the offense and the victim's attitude in a single page.

[29] The victim's written statement provided: "I awoke to someone forcibly restraining me, their body on mine with their hands forcibly holding me down and preventing me from screaming or calling out for help. The terror and fear I experienced in that moment [that] I awoke cannot be put into words. I feared [that] I would die, and my life flashed before me. I couldn't even look at him directly, fearing if he saw me looking at him that he would kill me. There was pain involved in the vaginal intercourse. I was understandably frightened and as a result, I was internally tight. The criminal forced me to guide him, increasing my physical and emotional discomfort. During one of [the] two oral sex rapes, I had to physically remove something

have plagued the victim since the repeated sexual assaults;[30] a summary of the psychiatric treatment that she has received since the assaults, including the number of therapeutic sessions she has attended, the type of medication prescribed and the cost of the treatment;[31] the victim's explanation of how the crime has impaired her physical health and well-being;[32] and details of the adverse effect that the assaults have had on her occupational and interpersonal skills.

It is apparent, therefore, that the increased sentence imposed on the defendant by Judge Fracasse was fully supported by the facts and circumstances known to him at the time of sentencing. It also is apparent from his sentencing remarks that Judge Fracasse properly considered those facts and circumstances in deciding to

hard found on the criminal's penis and then in my mouth. The anal intercourse proved to be painful also, but [it was] something I had to endure for fear of my life. The criminal, after perpetrating four separate rapes, tied me up, face down, restraining my feet and hands and leaving [me] defenseless and still in fear that he would return."

[30] These disorders include posttraumatic stress disorder, an exacerbation of preexisting bulimia, clinical depression, reawakened memories of childhood incest and avoidant personality disorder.

[31] The presentence report indicates that the victim has seen several therapists and been prescribed antidepressant medication. As the report states, the financial cost of these treatments has been great: "Though the victim had received the maximum benefit of [$10,000] from the Victim's Compensation Board, this money was spent in two years for her ongoing therapy. Her insurance covers about half of the cost of her therapy which now costs [$70] to [$115] per session. She estimates that her out-of-pocket expenses have been about [$15,000] so far. The victim indicates that she sees no end in sight for her need to be in treatment."

[32] According to the presentence report, "[t]he victim reports that another consequence of the crime has been a negative impact on her physical health and well-being. She believes the stress has weakened her immune system thereby causing her to suffer [b]ronchitis (shortly after the assault), marked aggravation of her allergies, and inducing a state of chronic fatigue. It has also aggravated other pre-existing conditions, such as digestive problems . . . [and] sinusitis . . . ." In addition, "several months before the anniversary of the rape, [the victim] experiences flashbacks, violent nightmares, an inability to sleep, or when she does sleep, waking early in the morning and then not being able to return to sleep."

impose a substantially greater sentence than previously had been imposed by Judge Ronan following the defendant's guilty plea. Because Judge Fracasse provided "on-the-record, wholly logical, nonvindictive reason[s] for the sentence"; *Texas* v. *McCullough,* supra, 475 U.S. 979–80; we conclude that the defendant is not entitled to a new sentencing proceeding.

The judgment of the Appellate Court is reversed in part, and the case is remanded to that court with direction to remand the case to the trial court with direction to vacate the second degree burglary conviction.

In this opinion KATZ and MCDONALD, Js., concurred.

NORCOTT, J., with whom CALLAHAN, C. J., joins, concurring. Although I agree with part I of the majority opinion, I write separately with respect to part II because I do not believe that the use of our supervisory powers is warranted in this case. The majority states: "We previously have exercised our supervisory powers 'to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial, but also for the perceived fairness of the judicial system as a whole.' " Yet the majority invokes this power to address a problem that it concludes did not occur in the present case, and that the United States Supreme Court has concluded is not reasonably likely to occur in cases where a greater sentence is imposed after trial than was imposed after a prior guilty plea. See *Alabama* v. *Smith,* 490 U.S. 794, 802, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

In *Alabama* v. *Smith,* supra, 490 U.S. 801, the Supreme Court explained that there are several legitimate justifications for the imposition of a heavier second sentence after a trial than after a guilty plea because the judge will usually have more information relevant

to sentencing after a trial than at the time of the guilty plea. For example, the judge may gather a fuller appreciation of the nature and extent of the alleged crimes during trial and may gain insights into the defendant's moral character and suitability for rehabilitation by observing his conduct during trial. Id. In addition, the factors that may have indicated leniency as consideration for the guilty plea are no longer present after trial. Id. In light of these legitimate justifications, I see no compelling reason to invoke our supervisory powers to require a court to articulate its reasons for imposing a heavier sentence. I believe that we should reserve the use of our supervisory powers for addressing serious concerns that affect the integrity of the defendant's trial in particular and the perceived fairness of the judicial system as a whole.

Thus, although I agree with the majority that the defendant is not entitled to a new sentencing proceeding, I do so for different reasons.